J-A24038-19

2019 PA Super 338

| | | |
|---|---|---|
| MARTA MARIA LLAURADO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAVIER GARCIA-ZAPATA | : | |
| | : | |
| Appellant | : | No. 180 EDA 2019 |

Appeal from the Decree Entered December 19, 2018
In the Court of Common Pleas of Delaware County Domestic Relations at
No(s): 2013-004938

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.*

OPINION BY COLINS, J.:                          **FILED NOVEMBER 13, 2019**

Appellant Javier Garcia-Zapata ("Husband") appeals from the decree entered December 19, 2018 divorcing Husband and Appellee Marta Maria Llaurado ("Wife") from the bonds of matrimony.  Husband now challenges an earlier order entered on June 26, 2018, dividing the marital estate and awarding alimony to Wife, which was finalized by the divorce decree.  For the reasons set forth below, we affirm.

Husband and Wife were married on October 10, 1989, are currently in their early 50s, and are the parents of three minor children born in 2002, 2004, and 2012.  On May 17, 2013, Wife filed a divorce complaint.  Wife later withdrew the complaint but then reinstated it on December 23, 2013.  Husband filed an affidavit of consent, and on July 9, 2014, Husband filed an answer and counterclaim.  Following the trial court's entry of an order

_____

* Retired Senior Judge assigned to the Superior Court.

establishing the date of separation as March 15, 2013, Husband filed an affidavit on March 26, 2015, stating that the marriage was irretrievably broken pursuant to Section 3301(d) of the Divorce Code, 23 Pa.C.S. § 3301(d). Wife filed a counter-affidavit of non-opposition to divorce on April 14, 2015.

Following a hearing, an equitable distribution master issued a report and recommendation on April 11, 2017. Both parties objected to the report and recommendation and requested a hearing *de novo*. The trial court conducted a *de novo* hearing on April 4, 2018. At the hearing, counsel agreed that the equitable distribution proceeding would be conducted on a "case-stated basis" on documentary exhibits and facts stated by counsel without requiring the testimony of their clients.[1] N.T., 4/4/18, at 4-5. The trial court issued its equitable distribution order with findings of facts and conclusions of law on June 26, 2018.

In the order, the trial court determined that the total value of the marital estate was $168,337 and that the estate should be divided with Wife receiving 60% and Husband receiving 40%. Order, 6/26/18, at 11, 22. Among the assets in the marital estate were four retirement investment accounts that Husband had liquidated in 2014 and 2015; the trial court valued the accounts

---

[1] In 1996, our Supreme Court abolished the case-stated procedure through an amendment to the Rules of Civil Procedure. Pa.R.C.P. 1038.2; **Warfield v. Shermer**, 910 A.2d 734, 738 (Pa. Super. 2006). Since that amendment, a dispute resolved on a case-stated basis shall be treated on appeal as a case submitted on stipulated facts. Pa.R.C.P. 1038.2 (1996 Explanatory Comment); **Warfield**, 910 A.2d at 738.

at $132,137 based on their gross value at the time of liquidation, concluding that Husband should be solely responsible for the taxes and penalties resulting from the early liquidation of the accounts. *Id.* at 3-4, 11-12. In addition, the trial court valued a Boston Whaler 200 Dauntless boat owned by the couple at $22,000. *Id.* at 15, 22. The trial court also awarded Wife alimony in the amount of $1,897 per month for four years from the date of the order and counsel fees in the amount of $5,000 payable in five monthly installments. *Id.* at 20-21, 23.

Husband filed a notice of appeal of the equitable distribution order. However, on August 20, 2018, this Court *sua sponte* quashed the appeal as being from a non-final order because, while the trial court had resolved the parties' economic claims, no divorce decree had been entered. The trial court then issued the divorce decree on December 19, 2018. Husband filed a timely notice of appeal of that order on January 10, 2019.[2]

Husband presents the following issues for our review:

1. The learned trial court erred by utilizing the gross amount of the retirement and/or investment accounts for purposes of equitable distribution without considering certain tax ramifications thereby compelling [Husband] to remain solely responsible for all assessed taxes[.]

2. The learned trial court erred by utilizing the gross amount of the retirement and/or investment accounts for purposes of equitable distribution when [Husband] while under the specter of unmerited and unwarranted domestic relations orders and

_____

[2] Husband filed his concise statement of errors pursuant to Pa.R.A.P. 1925(b) on January 31, 2019. The trial court issued its Rule 1925(a) opinion on March 15, 2019.

eventual imprisonment for purported contempt of said Orders was forced to liquidate certain retirement and/or investment accounts to meet support obligations[.]

3. The learned trial court erred by utilizing the gross amount of the retirement and/or investment accounts for purposes of equitable distribution when [Husband] liquidated same as [Husband] had no income and no other funds with which to pay certain support obligations as evidenced by [Husband's] unemployment from August 7, 2013 through January 11, 2016 and his imprisonment in the G.W. Hill Correctional Facility from contempt of said support obligations from May 4, 201[5] until November 5, 2015. *See Griffin v. Griffin*, 558 A.2d 86 (Pa. Super. 1989).

4. The learned trial court erred by failing to consider the federal, state and local tax ramifications associated with the accounts [Husband] was forced to liquidate to meet his support obligations. *See* 23 Pa.C.S.A. § 3502(10.1).

[5]. The learned trial court erred by determining the valuation assigned to a 2008 Boston Whaler boat totaled $22,000.00 and failing to credit [Husband] for the $4,500.00 [Wife] received when the boat was sold in 2014.

[6]. The learned trial court erred by determining [Wife] was entitled to an award of alimony in the amount of $1897 per month for four (4) years despite finding that as of the date of the hearing and equitable distribution award, [Husband] was unemployed.

[7]. The learned trial court erred by determining that alimony was appropriate in light of the alimony factors outlined in 23 Pa.C.S.A. § 3701 and in particular, [Husband's] employment status as of the date of the hearing and equitable distribution award.

8. The learned trial court erred by awarding [Wife] $5,000.00 in counsel fees when the invoice for said fees failed to segregate attorney time and expenses among representation for custody, child support, or equitable distribution.

9. The learned trial court erred by failing to address the parties' student loan obligations and failing to determine the parties were solely responsible for any and all student loan debt incurred by either party prior to or during the marriage and the party securing said debt would indemnify the other for any collection efforts

and/or seizures, past, present and future associated with the failure to timely pay his or her student loans.

Husband's Brief at 4-5 (reordered for ease of disposition).

Our review of a challenge of an equitable distribution award is governed by the following standards:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

*Brubaker v. Brubaker*, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted).

In his first four appellate issues, Husband challenges the trial court's valuation of the retirement investment accounts at the gross amount of $132,137 without making an adjustment for over $30,000 in taxes that Husband was required to pay when liquidating the accounts. Husband first argues that the valuation of the accounts at the gross amount violates Section

- 5 -

3502(a)(10.1) of the Divorce Code, which requires that a court weighing the division of marital assets consider "[t]he Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain." 23 Pa.C.S. § 3502(a)(10.1). Consideration of the tax ramifications of marital assets is mandatory. *Carney v. Carney*, 167 A.3d 127, 133 (Pa. Super. 2017). However, as this Court has explained, "the statute requires us only to **consider** the tax ramifications . . . along with numerous other listed factors, but the Divorce Code does not make a deduction for them mandatory." *Id.* at 133-34 (emphasis in original) (quoting *Balicki v. Balicki*, 4 A.3d 654, 664 (Pa. Super. 2010)).

The trial court plainly considered the tax ramifications of the retirement accounts in the equitable distribution order. The trial court found that the accounts were liquidated without the consent of Wife and without the permission of the trial court. Order, 6/26/18, at 3, 12. In addition, the court noted that, as a result of the Husband's unilateral liquidation of the accounts, Wife had lost the value of the potential market growth of the assets. *Id.* at 4, 12. The trial court thus concluded that Husband alone should bear responsibility for the taxes deducted as a result of the early liquidation of the accounts. *Id.* at 4, 12. The trial court properly considered the tax ramifications in assessing the value of the retirement accounts, and we decline Husband's invitation to overturn its well-supported findings and conclusions.

Husband further argues that the trial court's refusal to assign some shared responsibility for the taxes he paid is inequitable and fails to account for the fact that Husband's liquidation of the accounts was not voluntary and a result of his dire economic circumstances in 2014 and 2015. Specifically, Husband asserts that he was compelled to liquidate the accounts to meet "unmerited and unwarranted" child and spousal support obligations that he was required to pay during a long period of unemployment between August 2013 to January 2016. Husband's Brief at 14. Husband contends that on September 10 and December 15, 2014, the trial court overseeing the support matters issued two orders directing him to liquidate certain assets, including the retirement accounts. In addition, Husband argues that the trial court did not account for the fact that he was held in contempt in 2015 for failure to pay required support and ordered to serve a six-month sentence with his release contingent on the payment of $47,919.19 in support arrearages.

We reject these arguments. First, to the extent Husband directly challenges the child support and contempt determinations in this appeal, he is estopped from doing so. Husband previously appealed a February 2, 2015 trial court order requiring him to pay child support in the amount of $2,383 per month and the May 4, 2015 order finding Husband in contempt of his support obligations and sentencing him to six months of incarceration; this Court affirmed both orders. ***Llaurado v. Garcia-Zapata***, No. 1637 EDA 2015 (Pa. Super. filed March 21, 2016); ***Llaurado v. Garcia-Zapata***, No. 707 EDA 2015 (Pa. Super. filed Dec. 21, 2015). Collateral estoppel applies if (1) the

- 7 -

issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. **Weissberger v. Myers**, 90 A.3d 730, 733 (Pa. Super. 2014). Husband had a full and fair opportunity to litigate the child support and contempt orders in the custody action, these matters came to a final judgment on the merits, and the determinations were essential to the judgment. In addition, while this Court reserved its ruling on the spousal support orders until the divorce decree had been issued, Husband has not appealed from the spousal support determinations and the merits of the spousal support rulings are therefore not before this Court.

Furthermore, Husband's claim that he was compelled to liquidate the retirement accounts due to onerous support obligations is belied by the history of these earlier proceedings. In this Court's decision regarding the child support order, we affirmed the trial court's finding that, even though he had been out of the workforce for over two years, Husband's support obligations should be based off his earning capacity of $131,016 computed on his prior-year average income because Husband had failed to make a good faith effort to find a job. **Llaurado**, No. 707 EDA 2015, unpublished memorandum at 8-12. As we noted, "[t]o the extent [Husband] is arguing the court failed to

consider that he was unemployed for a significant period of time, the trial court considered [Husband's] unemployment and found him to be at fault for being unemployed." *Id.* at 12-13.

In the appeal from the contempt ruling, we affirmed the trial court's determination that Husband had failed to make a good-faith effort to comply with the support orders due to his failure to obtain employment commensurate with his past earnings over a period extending well over one year. *Llaurado*, No. 1637 EDA 2015, unpublished memorandum at 4-5. In addition, we concluded that the trial court did not err in setting Husband's release amount at $47,919.19. As we stated,

> The record reflects that the trial court found that [Husband] failed to meet his burden of proving that he had the present inability to comply with the court order. At the contempt hearing, [Husband] admitted to liquidating approximately $125,000.00 in assets that included a retirement account and a boat. Although [Husband] claimed that he used all of the money to meet his own expenses, he did not produce any evidence to substantiate his claim. After hearing [Husband's] testimony, the trial court rejected it and found that [Husband] had the present ability to comply with the order and set the release amount to coerce him to comply. We find no abuse of discretion.

*Id.* at 7 (internal citations omitted)).

Thus, the trial court found that Husband's long-term unemployment from August 2013 to January 2016 was of his own doing and he had not made a good-faith effort to find employment corresponding to his abilities that would allow him to pay the court-ordered support. In addition, Husband did not produce evidence in the support proceedings – and likewise he has not

produced evidence in the divorce action – to show that he used the proceeds from the liquidation of the retirement accounts to meet his support obligations. Finally, while Appellant references September 10 and December 15, 2014 trial court orders that he claims mandated him to liquidate the retirement accounts, Husband did not refer to these orders at the equitable distribution hearing and these orders do not appear in the certified record of this appeal. Accordingly, we see no reason to disturb the trial court's calculation of the retirement investment accounts as a marital asset based upon the gross amounts of the accounts at the time of liquidation.

In his next issue, Husband challenges the trial court's valuation of the Boston Whaler boat at $22,000. "[T]he Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves economic justice." **Carney**, 167 A.3d at 131 (citation omitted). "In valuing marital assets, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." **Id.** (quotation marks, brackets, and citation omitted). However, "[t]he trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." **Brubaker**, 201 A.3d at 185.

As the trial court recounts in the equitable distribution order, the Boston Whaler had been the subject of extensive litigation earlier in the divorce proceeding. Wife initially petitioned for the sale of the boat on May 5, 2014

- 10 -

to pay her living expenses on the basis that she was not working at the time and Husband was not complying with his court-ordered child and spousal support. On June 20, 2014, the trial court entered an order directing the parties to cooperate in immediately listing the boat for sale with Wife to receive 80% of the proceeds of the sale. On September 23, 2014, the trial court entered an order directing Husband to identify three boat dealers in Maryland and Wife to pick the dealer to use for the sale, with the terms of the prior order relating to the distribution of the proceeds remaining in effect. Upon learning that Husband sold the boat for $4,500 to a car dealership in Florida in October 2014, Wife filed a petition for contempt on February 9, 2015. The trial court then entered a stipulated order on April 2, 2015 setting forth that Husband had sold the boat and that Husband had paid Wife $5,750, including the amount received for the sale of the boat plus $1,250 in attorneys' fees.

In the equitable distribution order, the trial court determined that the October 2014 sale of the boat to a car dealership was in violation of the September 23, 2014 order and that the boat was sold at a "grossly undervalued price." Order, 6/26/2018, at 6, 15. The trial court reviewed the evidence of the boat's value submitted by Wife, which consisted of list prices on a boat resale website for the same model of Boston Whaler with ranges between $30,000 to $55,000 depending on the features and condition of the boat. *Id.* at 6, 14; **see also** Exhibit P-1. The trial court further found that the boat was originally purchased for approximately $37,000 to $38,000

between 2008 and 2010 and the boat was one year old at the time of purchase. Order, 6/26/2018, at 6, 14-15. Based on the evidence submitted, the trial court concluded that the boat had a value of $22,000. *Id.* at 15.

Husband argues that the trial court abused its discretion in valuing the Boston Whaler at $22,000 based on "unsubstantiated, unsupported internet valuations" that Wife submitted at the equitable distribution hearing. Husband's Brief at 26. Instead, Husband contends that the valuation of the boat was resolved in the stipulated April 2, 2015 trial court order setting forth the $4,500 price at which Husband actually sold the boat in 2014. Husband therefore asserts that the issue of the boat's valuation was moot. Finally, Husband contends that the trial court failed to credit Wife with the $4,500 previously tendered to Wife, as stated in the April 2, 2015 order.

Husband's arguments lack merit. First, the issue of the valuation was not moot as a result of the April 2, 2015 order, as that order explicitly provided that the issue of the proper valuation of the boat was preserved for equitable distribution. Order, 4/2/15, ¶1.

Furthermore, the trial court acted well within its discretion in disregarding the actual sale price of the boat and relying on the internet sale listings offered into evidence by Wife. As stated above, the trial court may rely on any evidence of value submitted or may rely on none of the evidence and use its own valuation method. *Brubaker*, 201 A.3d at 185. The record plainly supports the trial court's conclusion that Husband's October 2014 sale of the boat at a Florida car dealership was in patent violation of the September

23, 2014 order requiring that the sale take place at a boat dealership in Maryland of Wife's choosing. No evidence was submitted that Husband received offers for purchase from other dealers or private buyers. Moreover, the sale price was substantially less than the original purchase price approximately five to seven years prior to the sale and the list prices for similar Boston Whaler models, with no explanation offered by Husband for the diminution in the boat's value over that period. While Husband now objects to the fact that Wife only submitted internet listings at the equitable distribution hearing, the history of this litigation makes clear that Husband intentionally concealed the boat from Wife and unilaterally sold it contrary to the court-ordered procedure that was designed to determine the boat's value through the marketplace. Thus, Wife had no access to the boat to solicit an appraisal for the boat.

Finally, we reject Husband's contention that the trial court failed to credit Husband for his payment to Wife of the sale price of the Boston Whaler pursuant to the April 2, 2015 stipulated order. Rather, the calculations of the marital assets in the equitable distribution order clearly identifies that Wife already received $5,750 for the sale of the boat, including the $4,500 sale price and an additional $1,250 that was initially allocated to Wife as counsel fees in the April 2, 2015 order, but which the trial court deducted from Wife's

share of the marital estate in the equitable distribution order.[3]   Order, 6/26/18, at 22.

In his sixth and seventh appellate issues, Husband challenges the trial court's award of alimony to Wife in the amount of $1,897 per month for four years.  In making its alimony award, the trial court noted the ages of Husband, Wife, and their three children and the length of the marriage.  Order, 6/26/18, at 7.  The trial court found that Wife has sole physical custody of the couple's three children and that her monthly expenses to support herself and the children are approximately $8,000.  *Id.* at 7-8, 18.  The trial court determined that Wife earns an annual salary of $31,640.18, with a net monthly income of $1,942.43, as an account clerk, and that she moved in with her parents because she could not afford to live on her own with the children after being forced to leave the marital home.  *Id.* at 9, 18-19.  In 2013, Wife began receiving spousal and child support at the monthly rate of $1,897 and $2,193, respectively, and she had received the total amounts of $99,262.92 in spousal support and $156,941.74 in child support as of the date of the hearing.  *Id.* at 9, 19.

With respect to Husband, the trial court found that Husband has an earning capacity of approximately $140,000 per year with the potential to earn $20,000 or more beyond that sum and that he has a net monthly income

---

[3] Notably, the $1,250 paid in 2015 was included in the calculation of the marital assets rather than the counsel fees awarded in the equitable distribution order.  Order, 6/26/18, at 22.

of $10,458 per month. *Id.* at 7, 9, 19. The trial court recognized that Husband most recently earned approximately $185,000 per year working at an energy company but that he had been laid off from this job on March 8, 2018. *Id.* at 9, 19. Finally, the trial court found that Wife believed that Husband was engaging in an extramarital affair during the marriage. *Id.* at 9-10, 19-20.

A court entering a divorce decree may award alimony "as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S. § 3701(a).

> We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Conner v. Holtzinger Conner*, ____ A.3d ____, 2019 PA Super 251, *21 (filed August 20, 2019) (citation omitted). An award of alimony is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion or error of law. *Cook v. Cook*, 186 A.3d 1015, 1019 (Pa. Super. 2018).

In determining the propriety of alimony in a particular case, as well as the nature, amount, and duration of an alimony award, the court must consider the following factors set forth in Section 3701(b) of the Divorce Code:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b). The court is required to consider each of the seventeen Section 3701(b) factors where relevant. *Conner*, 2019 PA Super 251, *23. These factors do not, however, create an exhaustive list of the factors that may be considered. *Id.*

Husband challenges the trial court's analysis related to eight of the Section 3701(b) alimony factors. However, with respect to five of these factors – subsection (b)(3), (5), (10), (15), and (17) – Husband does no more than cite these factors in his brief, providing no explanation regarding any alleged deficiency in the analysis of the factors by the trial court. The argument with respect to these factors is thus waived for failure to develop the issue. *See Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." (citation, brackets, and quotation marks omitted)). Moreover, we observe that the trial court adequately addressed in the equitable distribution order the factors set forth at subsection (b)(3), relating to sources of income, (b)(5), relating to the duration of the marriage, (b)(10), relating to the assets and liabilities of the parties, and (b)(17), relating to the ability of party seeking alimony to support herself.

There is no indication that the subsection (b)(15) factor, relating to the federal, state, and local tax ramifications of the alimony award, is relevant in this matter. **See Conner**, 2019 PA Super 251, *23 (holding that the trial court must consider the Section 3701(b) factors **where relevant**).

Husband further argues that, with respect to the subsection (b)(1) factor, the trial court's finding that he had an earning capacity of $140,000 was improper in light of the fact that he was laid off one month prior to the equitable distribution hearing and his earnings at that point were effectively $0. However, Section 3701(b)(1) provides that a trial court consider both the "relative earnings **and** earning capacities of the parties" in determining the appropriate alimony award. 23 Pa.C.S. § 3701(b)(1) (emphasis added). "A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." **Conner**, 2019 PA Super 251, *19 (citation omitted). The trial court here did not ignore that Husband had been recently laid off from a job for which he was paid an annual salary of approximately $185,000, but found more pertinent his earning capacity based on his salary history and the prior determinations that Husband had a $140,000 earning capacity in the support proceedings. Particularly, in light of the prior determinations that Husband willfully decided to not obtain employment, no error occurred in basing the alimony award on a $140,000 earning capacity in spite of his current unemployment.

- 18 -

Husband also challenges an income and expense statement that Wife submitted at the equitable distribution hearing as "unsupported" and "wholly insufficient to support" the alimony award. Husband's Brief at 24; **see also** Exhibit P-3. This document is clearly relevant to the alimony award pursuant to Section 3701(b)(1), (3), (13), which require that the court consider both parties' earnings, income, and needs in determining an alimony award. To the extent Husband now complains that the income and expense statement is not sufficient, we note that he did not object to the admission of any of Wife's exhibits, and he did not challenge any of Wife's claimed income or expense items in argument at the hearing or in his post-hearing submission. N.T., 4/4/18, at 33; Husband's Proposed Findings of Fact and Conclusions of Law, 5/11/18. Accordingly, we find this claim to be wholly without merit.

Finally, Husband argues that the trial court's "one sentence reference" to Wife's mere belief that Husband engaged in an extramarital affair during the marriage did not support the alimony award. Husband's Brief at 24. As described above, the trial court is required to address each of the relevant Section 3701(b) factors, including subsection (b)(14) pertaining to the "marital misconduct of either of the parties during the marriage." 23 Pa.C.S. § 3701(b)(14); **Conner**, 2019 PA Super 251, *23. At the hearing, counsel for Wife stated that "from our perspective, [there was] marital misconduct in this case" in the form of an extramarital affair. N.T., 4/4/18, at 10. During his presentation, counsel for Husband noted that Wife "believes that [the marriage ended] based upon an extramarital affair" and that this explains "a

certain animus" that Wife continued to exhibit towards Husband. *Id.* at 23-24. The trial court did not make a factual determination regarding whether the marital misconduct occurred, but simply found that Wife believed that marital misconduct occurred. Order, 6/26/18, at 9-10, 19-20. There is no evidence in the equitable distribution order or the trial court's Pa.R.A.P. 1925(a) opinion that it relied on Wife's belief that an extramarital affair occurred in calculating alimony award.

In sum, and in light of our narrow review of an alimony award, we conclude that the trial court adequately addressed the relevant Section 3701(b) factors and acted well within its discretion in fashioning the alimony award.

In his eighth appellate issue, Husband challenges the counsel fee award to Wife of $5,000, arguing that the invoice and payment history that Wife submitted to the court was not segregated among the equitable distribution, custody, and support matters for which her counsel represented her. *See* Exhibit P-1. Husband further argues that the award was manifestly unjust because he was unemployed at the time of the equitable distribution order and Wife failed to establish a need for the award.

Pursuant to the Divorce Code, "the court may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S. § 3702(a).

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action

without being placed at a financial disadvantage; the parties must be 'on par' with one another.

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

*Brubaker*, 201 A.3d at 191 (citation omitted).

The trial court found that Wife had incurred a total amount of fees of $39,661 of which she had paid $17,851.99, and she had an outstanding balance of $29,335.89 with interest included. Order, 6/26/18, at 8, 21. While the trial court determined that the fee invoices were not separated with respect to whether they related to time and expenses related to representation in the custody, support, and divorce matters, the court found that a substantial portion of the counsel fees were incurred related to Husband's improper liquidation of the retirement accounts and the efforts to sell the boat and after its sale in contravention of the court's September 23, 2014 order. *Id.* The trial court further explained in its Rule 1925(a) opinion that the counsel fee award was proper in light of the "extensive amount of time that was spent trying the equitable distribution matter, including having the matter go through the Master's process and then preparing and trying the case" before the trial court. Trial Court Opinion at 19. In addition, the trial court noted that a substantial portion of the fees were related to Husband's

unauthorized liquidation of the retirement accounts and sale of the boat in violation of the court's September 23, 2014 order. *Id.*

Upon review, we conclude that the counsel fee award was not an abuse of discretion. While Husband claims that the award is defective because it was not based upon legal bills segregated according to the matter to which they related, he has cited no precedent that establishes a requirement that the party requesting counsel fees must submit itemized bills to the court. Nonetheless, the record firmly establishes that Husband's misconduct related to the sale of the Boston Whaler and the liquidation of the retirement investment accounts contributed to a substantial portion of the litigation, including multiple petitions related to the sale of the boat and the equitable distribution proceedings before the master and the trial court. The record further establishes Wife's need based on the fees she incurred resulting from Husband's misconduct and that Husband had an earning capacity of $140,000 that allowed him to pay Wife's counsel fees.

In his final issue, Husband argues that the trial court abused its discretion by failing to make a determination in the equitable distribution order that each party must remain responsible only for the student loan debt related to their own education. In its Rule 1925(a) opinion, the trial court observed that

> no mention was made, or evidence presented, by either party at the Hearing, or in arguments or submission of counsel, with respect to student loan obligations of the parties, except an unsupported reference on page 13 of [Husband's] Proposed Findings of Fact and Conclusions of Law filed on May 11, 2018.

Trial Court Opinion at 20; *see also* Husband's Proposed Findings of Fact and Conclusions of Law, 5/11/18, ¶27. We agree with the trial court's analysis. Neither party presented evidence regarding the amount of student loan debt owed by either party or argument concerning who should be responsible for any such debt. Therefore, the trial court did not abuse its discretion by not ruling on this issue.

For the foregoing reasons, we hold that the trial court did not abuse its discretion in awarding alimony to Wife, valuing the parties' assets, and effectuating the equitable distribution of the parties' marital property. *See Brubaker*, 201 A.3d at 184; *Cook*, 186 A.3d at 1019. Consequently, the divorce decree and the equitable distribution order are affirmed.

June 26, 2018 order and December 19, 2018 decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/19

- 23 -