J-A01039-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY MOHEN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTINE MOHEN, | : | |
| | : | |
| Appellee | : | No. 835 EDA 2020 |

Appeal from the Order Entered February 3, 2020
in the Court of Common Pleas of Montgomery County
Civil Division at No(s): No. 2015-10855

BEFORE:    BENDER, P.J.E., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY OLSON, J.:           **FILED SEPTEMBER 21, 2021**

Appellant, Timothy Mohen, ("Husband") appeals from the February 3, 2020 order, which amended a January 8, 2020 order and decree that both dissolved the marriage between Husband and Appellee, Christine Mohen, ("Wife") and provided for equitable distribution of their assets.  For the following reasons, we affirm, in part, and vacate, in part.  Specifically, we vacate the portion of the January 8, 2020 order that erroneously charges Husband with $4,360,158.00 in unaccrued interest on marital assets Husband fraudulently dissipated from the marital estate.  Because this disposition of an issue raised on appeal alters the overall calculations and distribution of the equitable distribution award, we remand for the trial court to issue a new order in accordance with this memorandum.

_____

*Retired Senior Judge assigned to the Superior Court.

We provide the following overview of this case as derived from the trial court's opinion and certified record. The parties married in 1986 and had three children together, all of whom are now adults. The parties separated after 27 years and 9 months of marriage in December 2013. Subsequently, Husband became engaged to Chelsea Hardy ("Fiancée"), with whom he lives in Pennsylvania along with their three minor children. Wife resides in New Jersey.

Both Husband and Wife have accounting degrees. In 1990, Wife left the paid workforce due to an agreement between the parties that she would tend to the family while Husband would be the wage earner. As such, Wife's present monthly earning capacity is only $1,071.79, while Husband's monthly net income is $64,000.00. During the marriage, Husband purchased and operated various business entities and real estate companies. Between the parties' personal and business interests, they amassed marital assets worth millions of dollars.

On October 4, 2011, Husband had the first of a series of meetings with an estate attorney to create trusts for the parties' children and update his estate plan. Husband did not include Wife in the meetings. In August 2012, Husband gave Wife a copy of his will, which he had newly executed on August 3, 2012. The will named Wife as the beneficiary of Husband's estate.

Meanwhile, after a series of extramarital affairs with other women, Husband began a relationship with Fiancée in mid-2012. In October 2012,

Wife found suspicious emails and a bill regarding tutoring costs with Fiancée's name. Husband denied being in an extra-marital relationship with Fiancée and told Wife he was helping a woman in Pennsylvania with her daughter's tutoring costs.

On October 5, 2012, Husband executed trust documents that transferred common shares of stock from two of his multi-million-dollar business entities into trusts for the benefit of the parties' children, who were 21, 20, and 17 years of age at the time. The corpus of each of the three trusts was approximately one million dollars. Husband named his business partner as trustee.

The parties separated on December 1, 2013. According to Wife, she did not learn about Husband's creation of the trusts until after they separated. Around February or March 2014, Wife discovered the trust documents in Husband's paperwork alongside a 2012 federal gift tax return, which Husband filed individually. Wife found that to be unusual because Wife typically prepared the parties' taxes and filed them jointly.

On March 17, 2015, Husband changed his will to include Fiancée and the three minor children he shared with her. Husband filed for divorce from Wife on May 26, 2015.[1] Wife filed an answer and counterclaim. On January 16, 2018, Wife filed a petition for special relief, seeking to set aside Husband's

---

[1] At some point, Husband filed a lawsuit in New Jersey, where Wife now resides, in an attempt to declare Wife incapacitated due to her mental health, but that lawsuit was dismissed.

October 2012 transfer of marital assets into the three trusts. Wife argued that Husband took these actions without her knowledge or consent as part of divorce planning. She averred that the transfer was fraudulent and/or a dissipation of their mutual marital assets, and the value of the trusts should be charged against Husband in the parties' equitable distribution scheme. Husband filed an answer and counterclaim to the petition, claiming that he told Wife about the trusts prior to their creation and Wife acquiesced in their creation. He also asserted that he arranged for the trusts as part of estate planning, not divorce planning. On April 10, 2018, the trial court conducted a hearing on Wife's petition. It deferred ruling on the petition until after the master's equitable distribution hearing.

On August 27, 2018, the parties stipulated to the values of certain marital assets, including the trusts. The parties agreed that the trusts held a combined asset value of $9,291,372.00. The master conducted a hearing on December 11, 2018, and issued a report and recommendation on January 3, 2019. Wife timely filed exceptions and requested a hearing *de novo* before the trial court.

Prior to the *de novo* hearing, the trial court granted Wife's petition for special relief. Specifically, by way of a June 6, 2019 order, the trial court deemed Husband's transfer of marital property into trusts for the children to be fraudulent and void. As such, the court considered any funds owed or paid

- 4 -

to the trusts as marital assets and chargeable against Husband in equitable distribution.

The trial court conducted the *de novo* equitable distribution hearing on June 17, 2019. It deferred its ruling until after the parties submitted proposed findings of fact and conclusions of law. On September 20, 2019, the trial court entered a divorce decree and equitable distribution order. Wife moved for reconsideration of the order as to logistics of payment, the failure to explain its reasoning, and the valuation amount. The trial court granted Wife's motion and vacated the September 20, 2019 order and decree.

On January 8, 2020, the trial court entered a new equitable distribution order and accompanying findings of fact and conclusions of law. The trial court determined the value of the parties' total marital estate to be $31,505,968.00, comprised of $24,418,964.00 in non-business-related assets and $7,087,004.00 in business-related assets. It awarded Wife 57% of the non-business-related assets, worth $13,918,809.00. The trial court charged Wife and Husband with certain assets in their possession. Based on the earlier finding that Husband dissipated assets from the marital estate, the trial court charged Husband with $14,642,475.00, representing the stipulated value of the trusts plus interest. The trial court determined Husband owed Wife $9,292,283.00, to be paid in 60 days with (1) $3,292,283.00 coming from Husband's AXA Account; (2) $3,292,283.00 transferred from Husband's retirement account into a retirement account for Wife's benefit via a qualified

domestic relations order; and (3) $3,292,283.00 in a cash payment to Wife. Finally, the trial court awarded Wife 30% of the parties' business-related assets, which amounted to $2,126,101.00. As many of the business-related assets were not liquid, the trial court ordered Husband to pay Wife $17,717.00 in 120 equal monthly installments along with three percent interest.

Wife again moved for reconsideration, this time requesting that the trial court expand the language of the order to permit Husband to make the payments to Wife within 60 days from any source, not just the specified accounts. On February 3, 2020, the trial court granted Wife's motion and amended the January 8, 2020 decree to specify that Husband needed to satisfy the amount "*via* any accounts/funds necessary." Amended Decree, 2/3/2020, at 1.

Husband timely filed a notice of appeal. Both Husband and the trial court complied with Pa.R.A.P. 1925.

On appeal, Husband raises the following issues.

1. Did the lower court err in overriding this Court's decision in **Balicki v. Balicki**, 4 A.3d 654 (Pa. Super. 2010), and in declining to deduct taxes associated with the sale of Husband's business and business real estate holdings?

2. Where Husband created trusts for his children as part of estate planning that began at the suggestion of his estate planning attorney [26] months before the parties separated, did the trial court err in:

   a. Concluding that Husband's creation of trusts for the parties' children constituted a fraudulent transfer and/or a "disposition to defeat obligations" under 23 Pa.C.S.

- 6 -

§ 3505(e) and charging Husband with receipt of the trust assets in equitable distribution?

b. Valuing the trust assets at $14,642,475[.00] where the parties had stipulated to a value of $9,291,372[.00] and where the record contains no basis for the trial court's finding that additional interest of $4.36 million had accrued on the trust assets from December 31, 2016 to April 2019?

c. Declining to deduct taxes from the value of the trust assets where the [trial] court had charged Husband with receipt of those assets and where it is undisputed that taxes will be paid on the trust assets when distributed?

3. Did the [trial] court err in ordering Husband to pay Wife $9.8 million within [60] days despite finding that Husband did not have even a third of that amount in cash and retirement assets combined and in fashioning an overall equitable distribution award that awarded virtually all of the non-business assets to Wife and left Husband with illiquid and volatile business interests and, after Husband turns over all of his cash and retirement assets, a remaining $9 million obligation that is impossible for him to satisfy?

Husband's Brief at 6-8 (suggested answers omitted).

Husband challenges the trial court's equitable distribution award. We review such challenges using the following well-established principles.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of

- 7 -

> effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

*Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa. Super. 2011) (internal citations and quotations omitted).

The Divorce Code instructs the trial court to divide marital assets equitably "in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S. §3502(a) (setting forth specific factors for consideration). Marital property generally includes all property acquired by either party during the marriage and the increase in value of certain non-marital property during the marriage. *See* 23 Pa.C.S. § 3501(a). Regarding valuation of assets, "[t]he Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves 'economic justice.'" *Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016) (citations omitted). "[I]n determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." *Id.*

We also bear in mind that the Divorce Code provides full equity power and jurisdiction to the court in matrimonial causes. 23 Pa.C.S. § 3323(f). It authorizes the court to "issue injunctions or other orders which are necessary

to protect the interests of the parties or to effectuate the purposes of this part." *Id.* The court may grant such "relief or remedy as equity and justice require against either party" or against certain third persons. *Id.*

### Issue 1: Tax Ramifications of Sale of Business Assets

In his first issue, Husband argues that the trial court disregarded subsection 3502(a)(10.1) when it calculated the value of the business assets awarded to Husband. Husband's Brief at 31. In terms of governing the equitable division of marital assets, the Divorce Code tasks the trial court with considering "[t]he Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain." 23 Pa.C.S. § 3502(a)(10.1).

According to Husband, he could not meet the equitable distribution payment schedule ordered by the trial court without liquidating his businesses. Husband's Brief at 34. Husband contends that liquidating the business assets would have large tax implications, thereby reducing the value of these assets by almost two million dollars. *Id.* He argues that case law requires the trial court to consider the tax ramifications of a sale of an asset regardless of whether a sale is likely. *Id.* at 35, *citing **Carney v. Carney**, 167 A.3d 127 (Pa. Super. 2017).

In its findings of fact following the *de novo* equitable distribution hearing, the trial court offered the following analysis of Husband's claim.

> The court finds that the parties' marital property in the form of Husband's business interests is illiquid and non-transferable to

Wife. The court found credible and weighed Husband's testimony that there are no potential sales for the above-cited businesses, and that, the real-estate associated with same is under long-term lease, and therefore, unlikely to be sold. The court weighed Husband's partial interest or co-owner status in the businesses and likewise weighed Husband's testimony concerning his role in said businesses as a chief negotiator with the banks, all of which makes the sale of his interest in any of the businesses problematic for equitable distribution purposes. The court likewise weighed the undisputed fact that 3 of Husband's 9 business ventures have failed, and that 3 of the businesses are pass-through companies when fashioning the equitable distribution award.

The court finds that it was not persuaded by the proposed tax implications for sale of the businesses and/or associated real estate given the speculative nature of any such sale, and given the unknown tax rates at the time of any such future sale. Thus, the court finds that any tax implications for the sale of any of the businesses or real estate will not be factored into the value of the property for equitable distribution.

Findings of Fact, 1/8/2020, at ¶¶ 28-29 (record citations omitted).

Recently, this Court recognized that pursuant to the Divorce Code, consideration of the tax ramifications of marital assets is mandatory. *Llaurado v. Garcia-Zapata*, 223 A.3d 247, 252 (Pa. Super. 2019), *citing Carney*, 167 A.3d at 133. "However, as this Court has explained, 'the statute requires us only to **consider** the tax ramifications ... along with numerous other listed factors, but the Divorce Code does not make a deduction for them mandatory.'" *Llaurado*, 223 A.3d at 252, *citing Carney*, 167 A.3d at 133-134 (quotation omitted).

As Husband recognizes, in *Balicki* and *Carney*, this Court determined that the deduction of taxes would be equitable because of the illiquid nature of one spouse's award compared to the cash awarded to the other spouse. In

*Llaurado*, however, this Court affirmed a trial court's valuation of retirement investment accounts, a marital asset, based upon the gross amounts without deduction of taxes. In doing so, we observed that "[t]he trial court plainly considered the tax ramifications," but declined to deduct taxes based upon the husband's actions. *Llaurado*, 223 A.3d at 252. In *Llaurado*, the husband unilaterally and prematurely liquidated his retirement investment accounts without the knowledge or permission of the wife. Although the husband claimed he did so because of financial dire straits and to meet his support obligations, he did not demonstrate he made a good-faith effort to find employment or that he used the proceeds to meet his support obligations. Accordingly, this Court declined to disturb the trial court's award. *Id.*

Likewise, we decline to disturb the trial court's valuation of Husband's business assets in this case. The trial court was fully aware of the illiquid nature of Husband's business assets and the potential tax consequences of a sale. Thus, the court considered the tax ramifications of a sale, as it was required to do under the law, but elected not to deduct taxes. In a marital estate as large and complex as this one, Husband has not convinced us that we should interfere with the trial court's ample discretion to value the assets. *See Mundy*, 151 A.3d at 236. Accordingly, no relief is due.

### Issue 2: Trusts

Husband's second issue relates to his contentions surrounding the trusts he created for the parties' adult children and contains three subparts. We address each *seriatim*.

### *Issue 2a: Fraudulent Transfer*

Husband first assails the trial court's decision to grant Wife's petition for special relief and deem Husband's creation of the trusts as a fraudulent transfer pursuant to subsection 3505(e) of the Divorce Code. Section 3505 of the Divorce Code is entitled "Disposition of property to defeat obligations." 23 Pa.C.S. § 3505. It contains a subsection entitled "Encumbrance or disposition to third parties." *Id.* at § 3505(e). That subsection provides that "[a]n encumbrance or disposition of marital property to third persons who paid wholly inadequate consideration for the property may be deemed fraudulent and declared void." *Id.*

In the instant case, Husband asserts the creation of the trusts was a gift to the children in reliance upon the advice of his estate planning attorney that had nothing to do with the parties' eventual separation. Husband's Brief at 37-39. Husband contends his attorney advised him to shelter some of his assets from estate taxation based upon the prospect that estate tax exemptions might be lowered. *Id.* at 41. According to Husband, Pennsylvania cases construing subsection 3505(e) are inapposite because they involved transfers made after the parties had separated or a divorce action was pending, suggesting that the spouse intended to defeat an extant obligation

to the other spouse.[2] *Id.* at 44. In contrast, Husband stresses that he began creating the trusts 26 months before the parties separated and completed the process 14 months before the separation. *Id.* at 45. Husband emphasizes that he retained no control over the assets, the trusts were gifts to his children, and the transfer was a fraction of his substantial estate. *Id.* at 50. Husband argues he did not have an equitable distribution obligation to Wife throughout the marriage and the legislature did not intend courts to examine retroactively all gifts and transfers made prior to separation. *Id.* at 51.

The trial court offered the following explanation for its ruling in its Pa.R.A.P. 1925(a) opinion. The trial court gave great weight to the fact that Husband had a series of meetings with an estate planning lawyer without Wife present. Trial Court Opinion, 7/27/2020, at 10-11. The court also emphasized that, by the time Husband executed the trusts, he had begun a relationship with Fiancée. *Id.* at 12. After executing a new will and the trust documents, Husband gave Wife a copy of the will but did not provide her a copy of the trust documents. *Id.* at 11-12. The trial court was skeptical of Husband's excuses as to why he did not include Wife in meetings with the estate attorney and found his testimony to be inconsistent. *Id.* at 9-11. Husband claimed they had defined roles: Wife cared for the children while he covered business duties. Husband believed Wife was not interested in business matters because

---

[2] We observe that notwithstanding Husband's statement, only one case cited by Husband actually relies upon subsection 3505(e), and it is a non-precedential court of common pleas case.

- 13 -

she was too busy attending to the children. He also claimed that the estate planning activities were too sophisticated for Wife and her mental capacity was erratic. On the other hand, Husband admitted Wife was responsible for handling the parties' personal taxes, handled many matters pertaining to the household and children, and was highly functioning in parts of her life. *Id.*

On several matters, the trial court credited Wife's testimony instead of Husband's. It found Wife's testimony credible that she did not learn about Husband's creation of the trusts until February or March 2014, when she discovered a 2012 gift tax return filed by Husband individually. *Id.* at 7-8. Husband insisted that he had told Wife about the trusts in June 2012 during a five-to-ten minute walk back from a lunch in Wildwood, New Jersey. Wife denied that any such conversation occurred, and the trial court found her denial to be convincing. *Id.* at 7, 9. Husband also claimed he had a conversation with Wife at a Houlihan's Restaurant in 2013 wherein Wife objected to the appointment of his business partner as trustee. Two of the parties' children also testified regarding this conversation. However, the trial court credited Wife's testimony that the conversation was about her opposition to appointment of Husband's business partner as executor of Husband's will, not anything to do with the trusts. *Id.* at 9-10.

After receiving evidence from both parties regarding the trusts, the trial court found that Husband did not create the trusts for the purpose of estate planning and instead created the trusts to dissipate the parties' marital assets.

*Id.* at 7, 11-12. The trial court found that Husband never discussed the trusts with Wife. *Id.* Even if he had, in the trial court's assessment,

> [t]here was absolutely no evidence that Wife ever **agreed** to the formation of the trusts. That is, even assuming that Wife **knew** about the trusts, but opposed the choice of trustee, then Husband still went forward and formed the trusts, and named that trustee over Wife's objection. After assessing and weighing credibility, the trial court, as fact finder, properly determined that Husband dissipated marital assets. The facts and equities of the case mandate such a conclusion.

*Id.* at 12 (emphasis in original).

The premise of Husband's argument is that the trial court abused its discretion by declining to accept Husband's testimony that he was engaged in estate planning instead of divorce planning at the time he made the transfers. The trial court's analysis relies upon its decision to credit Wife's testimony and to reject Husband's testimony. This credibility assessment is clearly within the province of the trial court. This Court will not re-weigh the evidence and disrupt credibility findings supported by the evidence. *Childress*, 12 A.3d at 456; *accord Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. 2002) (rejecting argument that husband transferred his company stock to the parties' son as part of a valid estate plan because husband transferred stock without wife's knowledge or consent, and concluding that imposition of constructive trust pursuant to Uniform Fraudulent Transfers Act was warranted).

Furthermore, Husband's additional arguments are unpersuasive. Husband maintains that he could not have intended to defraud Wife because the three-million-dollar trusts paled in comparison to the 10.9 million dollars

he intended to leave Wife as sole beneficiary of his will. Husband's Brief at 50. Subsection 3505(e) places no limits on the value of the marital property. Moreover, Husband's argument invoking proportionate values ignores the reality that the property at issue was not solely owned by him; it was marital property to which Wife also had rights. Marital property includes all property acquired by either party during the marriage regardless of how the title is held. 23 Pa.C.S. § 3501(a), (b). Property which a party has sold, granted, conveyed, or otherwise disposed of prior to the date of final separation must have been sold, granted, conveyed, or disposed of in good faith and for value to be excluded from marital property. *Id.* at § 3501(a)(5); *see DeMasi v. DeMasi*, 530 A.2d 871, 885 (Pa. Super. 1987) (holding trusts husband created for the parties' minor children in good faith must be included as marital property because husband did not establish the trusts in exchange for value). Furthermore, it also does not matter that the beneficiaries of the trusts are the parties' children. For purposes of subsection 3505(e), children are "third persons." *See* 23 Pa.C.S. § 3505(e).

A closer question is whether subsection 3505(e) applies to any transfer throughout the marriage or only post-separation transfers as Husband argues. In considering the issue, we observe that subsection 3505(e) does not place any temporal restriction on the declaration of an encumbrance or disposition of marital property as fraudulent. In fact, the legislature's use of nonspecific sweeping terms in subsection 3505(e) suggests that invocation of the

subsection falls within the trial court's broad discretion to fashion an equitable distribution award that effectuates economic justice and achieves a just determination of the parties' property rights. **See Childress**, 12 A.3d at 455-456. Moreover, Husband's attempt to minimize the transfer as a casual gift to his children for estate planning purposes long before he filed a divorce action belies the trial court's specific rejection of his professed intent. Simply put, the trial court found that Husband concealed the transfer from Wife as part of an overall plan to separate from Wife and to dissipate the assets available to Wife upon their eventual separation.[3] Accordingly, in lieu of voiding the trust transfer, the trial court deemed the value of the trusts as marital assets to be charged against Husband in equitable distribution. We discern no abuse of discretion in this determination.

### *Issue 2b: Interest*

Husband next questions the trial court's valuation of the trusts by including accrued interest. As discussed, at their creation in 2012, collectively the trusts were worth approximately three million dollars. The parties stipulated that on December 31, 2016, the value of the trusts was $9,291,372. Stipulation, 8/27/2018, at ¶ 3. The trial court's June 6, 2019 order directed

---

[3] Spousal concealment was often deemed an important factor in adjudicating the propriety of pre-divorce asset transfers in the cases cited in Husband's brief. Generally speaking, proof of concealment or the exclusion of a spouse from the transfer process militated against finding that such transfers were proper. Given the trial court's precise factual assessment in this case, its decision substantially aligns with the cited appellate precedents from our sister states.

that any funds owed and/or paid to the trusts should be considered marital assets and charged against Husband in equitable distribution. Order, 6/6/2019, at 1. Accordingly, when calculating the amount to charge Husband, the trial court included $990,945.00 that had been paid to the trusts between December 31, 2016, and April 2019. Findings of Fact, 1/8/2020, at ¶ 40. The trial court also found that "additional interest payments" had "accrued in the amount of $4,360,158[.00], making the total value of the trusts as of April 2019[,] $14,642,475[.00]." ***Id.***

Husband asserts that the trial court erred by finding that the trusts had accrued an additional $4,360,158.00 in interest as of April 2019. Husband claims this valuation was not based on evidence of record and the trial court should have applied the parties' stipulated value without adding additional interest. Husband's Brief at 53-55.

The latter part of Husband's argument is belied by the record. The stipulation of the parties was simply as to the value of the trusts, not an agreement that no further payments to or interest accrued on the trusts should be assessed. ***See*** Stipulation, 8/27/2018, at ¶ 3. Pursuant to the June 6, 2019 order, any funds owed or paid to the trusts were to be added to the value of the trusts. Accordingly, the trial court did not err or abuse its discretion by not using the stipulated $9,291,372.00 figure.

Husband is correct, however, that the record does not support the trial court's addition of $4,360,158.00 in interest. In its Pa.R.A.P. 1925(a) opinion,

the trial court offered no further explanation for its decision and referred this Court to its findings of fact and conclusions of law. As noted *supra*, those findings indicated that the court included $4,360,158.00 as "additional interest payments" that "accrued … making the total value of the trusts as of April 2019[,] $14,642,475." Findings of Fact, 1/8/2020, at ¶ 40. To support this finding, the trial court relied upon the following testimony of Wife's financial expert, Stephen Juska.

> [Wife's counsel:] With respect to the issue of monies paid to the trust[s] or [their] beneficiaries, since the additional $482,901[.00 in interest paid to the trusts], have you done a calculation of that amount?
>
> [Juska:] I have done a calculation of the interest that was due to the trust[s] from that date through April 2019, correct.
>
> [Wife's counsel:] And how much was that?
>
> [Juska:] $990,945[.00].
>
> ***
>
> [Wife's counsel:] In addition, have you done a calculation of the interest due to the trust[s] through maturity in 2035?
>
> [Juska:] Yes, I have.
>
> [Wife's counsel:] And how much is that?
>
> [Juska:] $4,360,158[.00].

N.T., 6/17/2019, at 16-17.

It is clear from Juska's testimony that the $4,360,158.00 had not accrued as of April 2019. Instead, that figure represented the amount of projected interest that would accrue through the trusts' maturity in 2035.

Only $990,945.00 of interest had accrued between December 31, 2016, and April 2019. Accordingly, we conclude that the trial court's inclusion of $4,360,158.00 of interest was manifestly unreasonable and an abuse of discretion.

### Issue 2c: Taxation of Trusts

The third subpart of Husband's second issue concerns taxation of the trusts. The trial court declined to deduct taxes from the value of the trusts, finding that there would be no tax ramifications to Husband or Wife. Findings of Fact, 1/8/2020, at ¶ 41.[4] Husband disagrees, arguing that taxes will need to be paid upon distribution of the assets regardless of who owns them, which reduces the value of the asset. Husband's Brief at 57-58. In his view, failing to include taxes creates a windfall for Wife because the valuation of the asset is inflated. *Id.* Husband maintains that once the court pulled the value of the assets back into the marital estate and charged Husband the value of the assets in equitable distribution, the trial court should have considered the taxes associated with the assets. *Id.*

Upon review, we discern no abuse of discretion in the trial court's failure to deduct taxes from the valuation of the trusts. The trial court's order did not change the ownership of the trusts or divest the children of their interests. Instead, to effectuate economic justice and right Husband's wrong of

---

[4] Alternatively, the trial court found that any tax ramifications would be too speculative to address. Based on our disposition, we need not address this alternate rationale.

- 20 -

dissipating the assets of the marital estate to create the trusts, the trial court simply made Husband live with the consequences of his decision to set up the trusts unilaterally. Because Husband alone made the decision to deplete the marital estate when he set up the trusts, the court charged Husband for the value of the corpus of the trusts and any additional accrued value. The trust distributions would be taxed to the beneficiaries whether Husband and Wife stayed married or got divorced. Without an actual change of title, neither Husband nor Wife would pay any taxes now or in the future regarding the trusts. Accordingly, we affirm this portion of the trial court's order.

### Issue 3: Timing of Payments

In his last issue, Husband argues that because he only had three million dollars in cash and retirement assets combined, the trial court erred and abused its discretion by ordering him to pay Wife over three times that amount — $9,876,849.00 — within 60 days. Husband's Brief at 59-64. According to Husband, even after he liquidates his retirement accounts and uses all his cash, he still would be $6.8 million short. *Id.* Husband argues that because the trial court found his minority business interests to be illiquid, it should have recognized that he did not have the ability to liquidate those interests by the deadline to pay Wife. *Id.*

The $9,876,849.00 owed to Wife was derived in part from the trial court's valuation of the trusts at $14,642,475.00, which, as discussed above, erroneously included $4,360,158.00 in unaccrued interest. Our vacation of

this portion of the decree reduces the amount Husband owes Wife and may affect the structure of how the trial court ordered the distribution of the equitable distribution award.  Accordingly, Husband's third issue is moot.

### Conclusion

Based on the foregoing, we affirm in part and vacate in part.  We vacate the portion of the order that includes $4,360,158.00 in interest in the valuation of marital assets Husband fraudulently dissipated and remand for the trial court to issue a new order in accordance with this memorandum.

Order affirmed in part and vacated in part.  Case remanded for issuance of a new order in accordance with this memorandum.  Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2021