J-A25044-25
J-A25045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHIH-HUI GREEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHEN R. GREEN | : | |
| | : | |
| Appellant | : | No. 3112 EDA 2024 |

Appeal from the Order Entered October 23, 2024
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  CID: 377117585, DR-45219


| | | |
|---|---|---|
| CHIH-HUI GREEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHEN R. GREEN | : | No. 3239 EDA 2024 |

Appeal from the Order Entered October 23, 2023
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  CID: 377117585, DR-45219

- 1 -

J-A25044-25
J-A25045-25

| STEPHEN RANDOLPH GREEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHIH-HUI GREEN | : | No. 3154 EDA 2024 |

Appeal from the Order Entered October 23, 2024
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  C-48-CV-2019-03305

| STEPHEN RANDOLPH GREEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHIH-HUI GREEN | : | |
| | : | |
| Appellant | : | No. 3227 EDA 2024 |

Appeal from the Order Entered October 23, 2024
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  C-48-CV-2019-03305

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY P.J.E. FORD ELLIOTT, P.J.E.:          **FILED MAY 5, 2026**

Chih-Hui Green (Wife) and Stephen Randolph Green (Husband) cross-appeal from the October 23, 2024 order, entered in the Court of Common Pleas of Northampton County, that finalized their divorce and disposed of their equitable distribution claims.  Both parties challenge both the October 23,

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

2024 order and the November 13, 2023 order that requires Husband to pay Wife alimony *pendente lite* (APL). We affirm.[1]

Husband and Wife were married in December 1996 and separated on October 12, 2018. The parties have two adult children. Separately, Husband has another child who was born in July 2019 and resides in China and who is not supported by Husband. Husband studied at Hampshire College and University of Massachusetts but did not complete his degree from either institution at that time.[2] While at University of Massachusetts, Husband studied abroad in Taiwan and thereafter began teaching the English language in that country. In 1992, Husband began working at a bicycle factory in Taiwan and eventually relocated to the United States with Wife.

Relevant to the appeals herein are two businesses owned by the parties, Bike USA, Inc. (BUSA) and SRI Group, LLC (SRI). In 1995, Husband began working at BUSA, which sells bicycles and related equipment. Throughout the

_____

[1] There are four appeals at issue in this decision. Husband's appeal at 3154 EDA 2024 and Wife's appeal at 3227 EDA 2024 challenge, *inter alia*, the court's conclusions as to the division of assets between the parties. Husband's appeal at 3112 EDA 2024 and Wife's appeal at 3239 EDA 2024 challenge the 2023 APL order. On January 14, 2025, this Court consolidated Husband's appeal at 3154 EDA 2024 and Wife's cross-appeal at 3227 EDA 2024, designating 3227 EDA 2024 as the lead docket. Similarly, that same day, we consolidated Husband's appeal at 3112 EDA 2024 and Wife's cross-appeal at 3239 EDA 2024, designating 3239 EDA 2024 as the lead docket. After further review, we now additionally consolidate all four appeals together and address them all in this decision. **See** Pa.R.A.P. 513.

[2] Husband has since earned an undergraduate degree.

parties' marriage, Husband was the primary wage earner while Wife was a homemaker. SRI was founded in 2003 and managed primarily by Husband, providing additional income to the family.[3] During the marriage, in or around July 2008, the original owners of BUSA sold BUSA to Husband for one dollar. In 2007, prior to acquiring BUSA, Husband's annual income was $35,000.00.

Wife was born in Taiwan, and her highest level of education is high school, which she completed in Taiwan. Wife relocated to the United States upon marrying Husband. In April 2018, Wife started working as a cashier, her only outside employment during the marriage,[4] earning $15.00 per hour, with a monthly net income of $1,724.00.

In April 2019, Husband filed a complaint in divorce against Wife that included claims for equitable distribution of the parties' marital property. In May 2019, Wife filed an answer and counterclaim. In August 2019, the trial court appointed a divorce master. The divorce master held three hearings at various times in 2022 and entered a report and recommendation in February 2024. Thereafter, Husband and Wife filed timely exceptions in the trial court. The court ruled on the parties' exceptions and entered the divorce decree, as

---

[3] SRI connects businesses and customers in the United States with factories in China.

[4] Although characterized by Wife and the trial court as her only employment, Husband testified that SRI, too, employed Wife prior to her 2018 employment. *See* N.T. Master's Hearing, 4/26/22, at 187.

stated above, on October 23, 2024. Husband and Wife timely appealed.[5]

Thereafter, the parties and the court complied with Pennsylvania Rule of

Appellate Procedure 1925. We consider the parties' appeals, each in turn.[6]

First, we review Husband's appeal at 3154 EDA 2024.[7] In that appeal,

Husband presents the following four issues for our review:

1. Did the trial court err as a matter of law or abuse its discretion because it did not tax effect the value of [BUSA]?

2. Did the trial court err as a matter of law or abuse [] its discretion by arbitrarily assigning a value to [SRI] based upon one [] monthly bank statement?

3. Did the trial court err as a matter of law or abuse its discretion because it found [SRI] is a marital asset rather than a non-marital asset which exists because of [Husband]'s personal goodwill?

4. Did the trial court err as a matter of law or abuse its discretion because it erred in its calculation of [Husband]'s post-separation withdrawals from a line of credit account?

---

[5] Husband filed his appeals on November 20, 2024. Wife thereafter timely filed her cross-appeals on December 2, 2024. *See* Pa.R.A.P. 903(b) (except as otherwise provided, "if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was served, or within the time otherwise prescribed by this rule, whichever period last expires").

[6] We have modified the caption in 3239 EDA 2024 to reflect that the appeal properly lies from the October 23, 2024 order. *See Costlow*, 914 A.2d at 442.

[7] In the instant appeals, for briefing purposes, Wife was designated as the plaintiff and Husband designated as defendant, which is the opposite of their designations in the trial court. For ease of disposition, we review the appeals in this decision in the following order: (1) 3154 EDA 2024; (2) 3227 EDA 2024; (3) 3112 EDA 2024; and (4) 3229 EDA 2024.

Husband's Brief, at 2 (unnecessary capitalization omitted).

In his first issue, Husband argues that the court erroneously failed to consider the tax effects on the value of BUSA in ordering equitable distribution between the parties. Husband relies on our decisions in *Carney v. Carney*, 167 A.3d 127 (Pa. Super. 2017), and *Balicki v. Balicki*, 4 A.3d 654 (Pa. Super. 2010), for the proposition that the court's failure to tax effect BUSA erroneously negated the equitable distribution scheme, thereby requiring reversal by our Court. *See* Husband's Brief, at 4. Husband requests a remand with directions to tax effect BUSA's value. *See id.* at 5. We find no relief is due.

The trial court explained its decision to decline to consider the tax consequences of BUSA in distributing the marital property as follows:

> Here, we are not required to make any deductions for taxes associated with the in[-]kind distribution of [BUSA]. We are only required to consider the tax ramifications of the in[-]kind distribution of [BUSA]. Any tax ramifications of a sale of [BUSA] will only occur if Husband sells [BUSA] following the in[-]kind distribution. Husband argues that [BUSA] is valued at approximately $675,000.00, less its gift value, and if Husband sold [BUSA], Husband would have to pay approximately $215,000.00 in taxes.
>
> Unlike the facts in *Carney* and *Balicki*, Husband is not required to make any cash payments to Wife reflecting her interest in the business. [. . .] While the Divorce Code, *Balicki*, and *Carney* make clear that we must consider tax ramifications whether a sale of the asset is likely or not, here we also consider that Husband is not required to make any cash payments to Wife reflecting her interest in the business.
>
> Rather, Husband's only cash payments to Wife are for alimony. Therefore, upon consideration of the tax effect of the in[-]kind

> distribution of [BUSA], we find it equitable to distribute [BUSA] to
> Husband without deductions for taxes.

Trial Court Opinion, 10/23/24, at 32-34 (some citations omitted).

Our standard of review in cases of equitable distribution is well-settled:

> [A] trial court has broad discretion when fashioning an award of
> equitable distribution. Our standard of review when assessing the
> propriety of an order effectuating the equitable distribution of
> marital property is whether the trial court abused its discretion by
> a misapplication of the law or failure to follow proper legal
> procedure. We do not lightly find an abuse of discretion, which
> requires a showing of clear and convincing evidence. This Court
> will not find an abuse of discretion unless the law has been
> overridden or misapplied or the judgment exercised was
> manifestly unreasonable, or the result of partiality, prejudice,
> bias, or ill will, as shown by the evidence in the certified record.
> In determining the propriety of an equitable distribution award,
> courts must consider the distribution scheme as a whole. We
> measure the circumstances of the case against the objective of
> effectuating economic justice between the parties and achieving a
> just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the
> evidence and decide credibility and this Court will not reverse
> those determinations so long as they are supported by the
> evidence. We are also aware that a master's report and
> recommendation, although only advisory, is to be given the fullest
> consideration, particularly on the question of credibility of
> witnesses, because the master has the opportunity to observe and
> assess the behavior and demeanor of the parties.[8]

**Carney**, 167 A.3d at 131 (citation, quotation marks, and brackets omitted).

_____

[8] We recognize that the master's report "does not come to the court with any
preponderate weight or authority which must be overcome. The reviewing
court must consider the evidence, its weight[,] and the credibility of the
witnesses, *de novo*. The [m]aster's report is not controlling, either on the
[trial] court or on the appellate court." **Rothrock v. Rothrock**, 765 A.2d 400,
404 (Pa. Super. 2000); **see also Snyder v. Snyder**, 275 A.3d 968, 976 (Pa.
Super. 2022) ("[A]lthough the master's report is entitled to great weight, the
final responsibility of making the distribution rests with the trial court.").

As to determining the value of the parties' property, this Court has explained that:

> the Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves economic justice. In valuing marital assets, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. However, this Court has consistently held that, in determining the value of marital property, the [trial] court is free to accept all, part[,] or none of the evidence as to the true and correct value of the property.

*Id.* at 131-32 (citations, quotation marks, and brackets omitted). The Divorce Code sets forth eleven factors to consider in an equitable distribution analysis, including the tax consequences and expenses associated with the sale of each marital asset. *See* 23 Pa.C.S. § 3502(a)(10.1). Tax consequences must be considered, even if no sale is imminent. *See Carney*, 167 A.3d at 134 ("the tax ramifications and expenses associated with the sale of a marital asset is a relevant consideration whether a sale is likely or not"); *see also* 23 Pa.C.S. § 3502(a)(10.2). Although consideration of tax implications is mandatory, adjustments based on any such implications are not required. *See Balicki*, 4 A.3d at 664 (approving of trial court's explanation that Divorce Code "requires us only to **consider** the tax ramifications and expense of sale along with numerous other listed factors, but the Divorce Code does not make a deduction for them mandatory") (emphasis in original); *see also Carney*, 167 A.3d at 134 (concluding "trial court erred in failing to consider evidence

- 8 -

related to the potential sale of the auto transport business before assigning the asset to Husband").

Here, after our review, we find no abuse of discretion or error of law, and we conclude that the record supports the trial court's findings. *See Carney*, 167 A.3d at 131. Specifically, and contrary to Husband's claims, the court properly considered the tax ramifications of the sale of BUSA. *See* Trial Court Opinion, 10/23/24, at 33-34 ("While the Divorce Code, *Balicki*, and *Carney* make clear that we must consider tax ramifications whether a sale of the asset is likely or not, here **we also consider** that Husband is not required to make any cash payments to Wife reflecting her interest in the business.") (emphasis added). Instantly, the trial court acted within its discretion in concluding that no deduction for BUSA for any future tax consequences was necessary in effectuating the property distribution, especially considering the totality of the property distribution scheme where the trial court ordered no significant lump sum payments by Husband to Wife. *See Balicki*, 4 A.3d at 664 (Divorce Code does not make deduction for tax ramifications mandatory). Accordingly, no relief is due on Husband's first issue.

In his second issue, Husband asserts that the trial court erred in arbitrarily assigning value to SRI based solely on a monthly bank statement and specifically claims that:

> The trial court used the balance of the business operating account closest to date of separation to value [SRI]. The account balance used was September 30, 2018 ($112,270.73). The parties separated October 12, 2028. This account distributed by the court is a business bank account owned by [SRI]. It is the company's

operating account. It is not a divisible asset. The SRI profits are reported annually in tax returns[,] and the income was used to calculate APL. Moreover, it is a conduit account—it receives payments for purchases to be paid to suppliers.

Husband's Brief, at 5-6 (citations and unnecessary capitalization omitted). Husband concludes that SRI, and by extension its account, are not marital assets and that distribution of the account is a "double dip."[9] *Id.* at 6. We conclude that no relief is due.

Instantly, the trial court observed that neither party submitted an appraisal value of SRI or obtained an expert to value it. *See* Trial Court Opinion, 10/23/24, at 40. Also, the court noted that it only determined SRI's checking account was marital property, but that, otherwise, SRI does not have any assets, as SRI is operated via use of a laptop in the marital home's kitchen. *See id.* at 42.

After our review, we find the issue waived as Husband fails to cite to any authority in connection with this argument, in violation of Pennsylvania Rule of Appellate Procedure 2119.[10] *See* Pa.R.A.P. 2119(a) ("The argument

_____

[9] *See, e.g.*, *Rohrer v. Rohrer*, 715 A.2d 463, 466 (Pa. Super. 1998) (defining prohibited "double dipping," i.e., using the same revenue as source for support and equitable distribution).

[10] Even if not waived, we would conclude that Husband mischaracterizes the trial court's findings insofar as he overstates what parts of SRI the trial court found to be marital property, which we herein note was only SRI's checking account. *See* Trial Court Opinion, 10/23/24, at 40. In any event, we fail to discern any abuse of discretion or error of law by the trial court in its valuation of that account, especially insofar as Husband concedes the court relied on record evidence in the form of the monthly bank statement closest in time to the parties' separation. *See Benson v. Benson*, 624 A.2d 644, 646 (Pa.
*(Footnote Continued Next Page)*

**shall be divided into as many parts as there are questions to be argued** [. . .] **followed by such discussion and citation of authorities** as are deemed pertinent.") (emphasis added); **see also C.H.L. v. W.D.L.**, 214 A.3d 1272, 1277-78 (Pa. Super. 2019) ("It is not the duty of this Court to act as appellant's counsel, and we decline to do so. We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived.") (citations and quotation marks omitted); **Llaurado v. Garcia-Zapata**, 223 A.3d 247, 257-58 (Pa. Super. 2019) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under [Rule] 2119."). Accordingly, we proceed to our review of Husband's next issue.

In his third issue, as a continuation of his previous argument, Husband claims that SRI is not a marital asset and takes issue with the trial court's conclusion that Husband's services to SRI are not "so personal" to constitute what is referred to as excludable professional goodwill. **See** Husband's Brief, at 7. Husband argues that the evidence in the record belies the trial court's

_____

Super. 1993) (noting that "the trial judge has discretion to choose valuation dates of marital assets in such a way that will work justice between the parties" and observing that "it was not an abuse of discretion for a trial judge to value, as of the date of separation, a closely held business which is largely under the control of one spouse to the exclusion of the other"); **see also** Husband's Brief, at 5 ("The [t]rial [c]ourt used the balance of the business operating account closest to date of separation to value [SRI]."). Under the appropriate standard of review, we find no abuse of discretion in the trial court's determinations regarding value of assets, which determinations are supported in the record. **See Carney**, 167 A.3d at 131.

conclusion regarding professional goodwill because the SRI business model is based on situations where "[f]riends recommend customers to Husband, he is bilingual, [and he] knows people in China and is able to connect U.S. customers with Chinese factories to purchase products because of his personal relationships." *Id.* Husband concludes that his "relationships are non-transferable and purely personal. SRI has no marital value because any value is attributed to Husband's personal goodwill." *Id.* at 8. We find no relief is due.

By way of explanation, when considering an equitable distribution in divorce, this Court has defined goodwill in valuing a business through its "going-concern value":

> Going-concern value refers generally to the ability of a business to generate income without interruption, even where there has been a change in ownership, whereas goodwill represents a preexisting relationship arising from a continuous course of business which is expected to continue indefinitely. Goodwill is, therefore, one benefit among many of owning a fully-functional business rather than a collection of assets. It follows that goodwill value is a component of the going[-]concern value of a business; goodwill and going[-]concern are not separate methods of valuing the same intangible thing.

*Gaydos v. Gaydos*, 693 A.2d 1368, 1375 (Pa. Super. 1997) (*en banc*) (citations and quotation marks omitted); *see id.* at 1372 (defining goodwill as "the favor which the management of a business has won from the public, and probability that old customers will continue their patronage") (citation and quotation marks omitted). We further explained the differences between

professional goodwill and enterprise goodwill in considering equitable distribution in divorce:

> [I]n determining whether goodwill should be valued for purposes of equitable distribution, the courts must look to the precise nature of the goodwill. Goodwill which is intrinsically tied to the attributes and/or skills of certain individuals is not subject to equitable distribution because the value thereof does not survive the disassociation of those individuals from the business. Thus, where such goodwill is attributable solely to an individual's attributes, it cannot be viewed as a value of the business as a whole. This type of goodwill, which is non-transferable and purely personal to the professional spouse, is often referred to as professional goodwill.
>
> The [S]upreme [C]ourt also recognized [. . .] there exists another type of goodwill which is wholly attributable to the business itself, and is subject to distribution. As the single individual's contributions become less substantial, the good reputation enjoyed by a business entity becomes less related to the single individual and more a product of the business entity in general, and thus, more capable of surviving the disassociation of the single individual. Goodwill of this nature is often referred to as enterprise goodwill. Both forms of goodwill are intangible and difficult to value.

*Id.* (citations and quotation marks omitted). Reversible error occurs if the court "values[,] for equitable distribution[,] that goodwill which [is] personal to Husband and thus inalienable." *Id.* at 1373.

Instantly, the trial court found the goodwill in SRI to amount to enterprise goodwill, rather than professional goodwill, for the following reasons:

> Husband started [SRI] in 2003 "to bring extra money to the household." [N.T. Master's Hearing, 4/26/22, at 185.] Thus, we find that the [SRI] checking account is marital property. We further find that [SRI] is not a product of Husband's professional goodwill. [SRI] connects customers in the United States with

buyers located in China. Husband stated, "I've acquired a couple of people, just like the other one . . . that mostly have been friends recommending—someone who needs something in China, and I make a cut in the middle." [SRI] does not have any employees, buildings, or assets. Husband operates [SRI] from a laptop in his kitchen. We also note Husband's testimony that he withdrew money from [SRI] to use as a down payment on the Bethlehem property.[11] We cannot say that [SRI] would not earn future income if Husband no longer operates the business. We find that Husband's services to [SRI] are not so personal to constitute professional goodwill. Thus, the [SRI] checking account is subject to equitable distribution.

Trial Court Opinion, 10/23/24, at 42-43 (citations omitted).

After our review, despite Husband's claims to the contrary, there is no evidence of goodwill in SRI. Here, the parties failed to proffer any valuations for SRI in the trial court, and because it has no assets of record aside from the existing checking account, by valuing SRI equal to the value of the checking account, the trial court implicitly determined that SRI had no goodwill value at all, professional or enterprise. Given the lack of credited record evidence that SRI has repeated customers or past customers that are expected to bring repeat business in the future, let alone evidence of indefinite business relationships, *see Gaydos*, 693 A.2d at 1372, we discern no abuse of discretion in the court's implicit finding that SRI has no goodwill.[12] *See*

_____

[11] The Bethlehem property is among the assets the trial court divided in the instant equitable distribution, but it is not directly at issue in this appeal.

[12] Husband's claim that past customers of SRI recommend future customers does not meet the definition of goodwill because the definition requires that past customers provide repeat future business of their own and not that past customers convince other new customers to be patrons. *See Gaydos*, 693 A.2d at 1372 (defining goodwill as "the favor which the management of a
*(Footnote Continued Next Page)*

*Carney*, 167 A.3d at 131. As there is no goodwill value in SRI, the court did not err in distributing the assets in that account. Accordingly, no relief is due on Husband's third issue.

In his fourth issue, Husband avers that the trial court erred in holding him solely responsible for Husband's post-separation draws on a line of credit, which funds he spent on higher education payments for the parties' children. *See* Husband's Brief, at 8. Husband argues the education payments, and therefore debt on the line of credit, should be shared between the parties because of an alleged agreement between the parties to pay for their children's higher education expenses. *See id.* Husband seeks a remand for his proposed correction. *See id.* at 9. Again, no relief is due.

The trial court determined that Husband was solely responsible for the post-separation draws on the line of credit, as follows:

> The record is devoid of evidence indicating that Husband and Wife intended to form a legally binding contract to pay for their children's college educations. We find that Husband and Wife did nothing more than formulate a plan for the children to have resources to fund their college expenses. [. . .] Husband testified that one line of credit increased post-separation to pay for their children's educations. [*See* N.T. Master's Hearing, 4/26/22, at 136-37]. Husband testified, "I was advised that [Wife] agreed that we could continue to use marital assets to pay for [a child's] final year at boarding school." [*Id.* at 137. . . .] Because we find that Wife did not legally contract to pay for the children's college expenses, the post-separation withdrawal on the line of credit is not a marital debt.

---

business has won from the public, and probability that **old customers will continue their patronage**") (emphasis added).

- 15 -

Trial Court Opinion, 10/23/24, at 50 (citations and unnecessary capitalization omitted).

After our review, we find this issue waived because Husband fails to cite any authority in connection with this argument, in violation of Rule 2119(a).[13] *See* Pa.R.A.P. 2119(a); *see also C.H.L.*, 214 A.3d at1277-78; *Llaurado*, 223 A.3d at 257-58. Thus, Husband is not entitled to any relief in his appeal at 3154 EDA 2024.

Next, we turn to Wife's cross appeal at 3227 EDA 2024. In that appeal, Wife raises the following issues for our review:

1. Did the trial court err as a matter of law or abuse its discretion by directing that Husband would be entitled to payment for expenses associated with the Las Vegas property as there was no evidence of any expenses related to the Las Vegas property?

2. Did the trial court err as a matter of law or abuse its discretion by determining that [BUSA] was a gift to Husband as the record

---

[13] Even if not waived, we discern no error of law or abuse of discretion in the trial court's determination that, absent a written contract on the issue of paying for their children's education, Husband was solely responsible for the draws he made on the line of credit. Also, any alleged agreement between the parties regarding boarding school or high school does not inherently extend to an agreement regarding college education. This notion is especially true where the trial court expressly credited Wife's testimony on this point, which we do not reweigh, *see Carney*, 167 A.3d at 131, insofar as Wife testified that she did not agree to pay for the children's college educations. *See* N.T. Master's Hearing, 4/26/22, at 221; *see also In re Estate of Johnson*, 970 A. 2d 433, 439 (Pa. Super. 2009) (parents do not have legal obligation to pay for their children's college education but can assume that responsibility through contract); *Mackay v. Mackay*, 984 A. 2d 529, 534 (Pa. Super. 2009) (finding parties did not intend to form legally binding contract but rather "the married couple was attempting to formulate a plan to ensure the children would have resources to pay for college") (citations omitted).

indicates that Husband's acquisition of [BUSA] was a business transaction?

3. Did the trial court err as a matter of law or abuse its discretion by determining that [BUSA] had a value of $304,300.00 at the time Husband acquired the business as the record was devoid of any evidence that would substantiate such a valuation?

4. Did the trial court err as a matter of law or abuse its discretion by averaging the parties' respective experts' opinions of value for [BUSA] as the trial court should have accepted Wife's expert's opinion of value?

5. Did the trial court err as a matter of law or abuse its discretion by directing that the cryptocurrency assets in Husband's control be divided in kind as the testimony indicated that Husband controlled the parties['] investments and as Wife did not have the technological knowledge to manage cryptocurrency assets?

6. Did the trial court err as a matter of law or abuse its discretion by awarding alimony for a period of seven years and three months at a rate of $2,500.00 per month as a greater award was demanded by the facts?

7. Did the trial court err as a matter of law or abuse its discretion by awarding an equal division of marital assets as i[t] failed to consider the factors under [S]ection 3502 of the Divorce Code?

8. Did the trial court err as a matter of law or abuse its discretion by failing to award Wife counsel fees and costs as Wife was financially dependent upon Husband and showed a need for such award?

Wife's Brief, at 2-4 (unnecessary capitalization omitted). We find no relief is due.

In her first issue, Wife argues that the court erred in granting Husband payments for expenses at the Las Vegas property[14] where there existed no

---

[14] The trial court summarized the record evidence pertaining to the Las Vegas property as follows:
*(Footnote Continued Next Page)*

- 17 -

record evidence of any such expenses. *See* Wife's Brief, at 9. Further, Wife suggests that this ambiguity—ordering payments that do not exist—renders the October 2024 order interlocutory and non-appealable insofar as additional proceedings are required to identify the substance of the payments. *See id.* at 10. Wife concludes that a remand is required for those proceedings. *See id.* We disagree.

Here, the trial court explained its determination on costs associated with the Las Vegas property—based on Husband's exception to the master's recommendation—as follows:

> We agree with Husband that he is entitled to consideration for payment of expenses for the Las Vegas property because we conclude that payment of homeowner association fees is akin to

_____

> In 2012, the parties purchased the Las Vegas property for $54,000.00[,] and the property is currently vacant. Neither Husband nor Wife submitted an appraisal of the market value of the Las Vegas property. Husband relied on Zillow's estimate that the property's value is $288,300.00. Husband testified that Husband and Wife agreed that the Las Vegas property was intended to be used as an investment for their children's college funds. He testified that he, Wife, and the children all discussed the parties funding the children's college education. Husband stated that he did not have a written agreement indicating the parties' intentions to pay for their children's educations. Husband testified that Wife later refused to use the income generated from the Las Vegas property for their children's college funds. Wife testified that she did not agree that any of the parties' investments would be used for the children's college educations. Rather, she stated that she agreed with Husband that the property would be used to invest in the children's high school educations.

Trial Court Opinion, 10/23/24, at 13 (citations omitted).

- 18 -

the duty to maintain the property. ***See*** [***Schmidt v. Krug***, 624 A.2d 183, 186 (Pa. Super. 1993)] ("The duty to maintain is a joint obligation."). Moreover, at the time of separation, Husband and Wife had the same ownership interest in the marital home. ***See*** [***Cerny v. Cerny***, 656 A.2d 507, 556 (Pa. Super. 1995)]. Therefore, payment of fees relating to the property was a joint responsibility. Husband shall be entitled for payment of expenses relating to the Las Vegas property.

Trial Court Opinion, 10/23/24, at 24. Nevertheless, the trial court further explained that Husband failed to establish that any such expenses existed:

The record is devoid of evidence reflecting the amount Husband paid for expenses relating to the Las Vegas property. Counsel for the parties confirmed that there is nothing in the record regarding these expenses. Therefore, although we find that Husband is entitled to consideration for payment of these expenses, our [o]rder will not reflect this consideration.

***Id.*** at 23 n.7 (citations omitted).

After our review, contrary to Wife's claims, we conclude that there is no meaningful legal ambiguity in the trial court's conclusions, and the October 2024 order is final because the trial court specifically found that there was no record evidence of any expenses associated with the Las Vegas property. ***See*** Trial Court Opinion, 10/23/24, at 23 n.7. We find that the trial court's decision granted Husband's exception to the master's failure to award shared costs for expenses at the Las Vegas property, but, under the circumstances heretofore described, Husband needed to proffer record evidence of any such expenses. Husband failed to do so. Restated, Husband's exception was granted for zero dollars, which, in result, is equivalent to a denial of Husband's exception on that point. In any event, we discern no error of law or abuse of discretion in granting Husband that amount (zero dollars) because he failed to carry his

burden of proof and proffered no evidence of any potentially relevant expenses.[15] *See Carney*, 167 A.3d at 131; *see also Kraisinger v. Kraisinger*, 928 A.2d 333, 343 (Pa. Super. 2007) (finding that party's "failure to argue the exception was tantamount to a failure to make an exception"). Moreover, we discern no abuse of discretion in the order for Wife to share in the costs and expenses of maintaining the marital property, which in this case amounted to nothing, especially where the Divorce Code calls for such consideration. *See* 23 Pa.C.S. § 3502(a)(7) (relevant factor in considering equitable distribution, among others, is "The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker."). Accordingly, no relief is due on Wife's first issue.

In her second issue on appeal, Wife claims that the trial court erred in concluding that BUSA was a gift to Husband, thereby resulting in an exclusion of BUSA's gift value from the equitable distribution of marital assets, pursuant to the Divorce Code, *see* 23 Pa.C.S. § 3501(a)(3). *See* Wife's Brief, at 11. In connection with this claim, Wife asserts that the integration clause in the

---

[15] We might have found Wife's challenge is nonjusticiable because neither is Wife aggrieved since she incurred no liability by the grant of this exception, nor does Husband contest the trial court's order. Nevertheless, standing, ripeness, and mootness concerns were not raised by the parties, so we may not consider them. *See Rendell v. Pennsylvania State Ethics Comm'n*, 983 A.2d 708, 717 (Pa. 2009) (explaining that standing, ripeness, and mootness may not be raised by courts *sua sponte*); *see also In re Nomination Petition of Jordan*, 277 A.3d 519, 529 (Pa. 2022) (same).

BUSA sales agreement prevents outside considerations by the court of whether the transfer of BUSA to Husband was a gift rather than a sale, especially where the contract made no mention of a gift. *See id.* at 11-12. Further, Wife claims that no evidence or testimony by the previous owners of BUSA is in the record, thereby precluding a finding of clear, precise, and convincing evidence of donative intent, and requiring that we find that the trial court erred in concluding the sale of BUSA to Husband was a gratuitous transaction. *See id.* at 13. In connection with this portion of her argument, Wife maintains that the trial court wrongly relied on our decision in *Hera v. McCormick*, 625 A.2d 682 (Pa. Super. 1993), especially because that case is not a divorce action. *See* Wife's Brief, at 12-13. We disagree that Wife is entitled to relief on this issue.

The trial court explained why it determined Husband acquired BUSA by way of gift as follows:

> Husband has met his burden in establishing that [BUSA] was a gift. Husband testified that he worked for the prior owner[s] of [BUSA], [the Lius[16]], for sixteen years. When Husband was working for Liu, Husband lived with Liu and Liu's family for one year. During that time, Husband helped [BUSA] recover millions of dollars in losses. Husband testified that on July 18, 2008, Liu gifted him [BUSA] in consideration of payment of $1[.00]. Husband testified that Liu gifted [BUSA] to him "to thank me for

---

[16] The parties and court generally refer to Ssu-Liu Liu, as the prior owner of BUSA. Nevertheless, the record reflects that Liu's wife, Kai-Chi Su Liu, owned 70 percent of BUSA at the time of the transfer. Notwithstanding this ambiguity, between them, the Lius owned the business in its entirety. *See* N.T. Master's Hearing, 4/26/22, at 173.

what I had done for him over the years." Wife did not rebut Husband's testimony that [BUSA] was a gift.

As such, [BUSA] is considered non-marital property and only the increase in its value should be included in equitable distribution. When Husband was gifted [BUSA], it was valued at approximately $304,300.00. Therefore, $304,300.00 shall be excluded from the marital value of [BUSA].

Trial Court Opinion, 10/23/24, at 28-29 (citations omitted).

After our review, initially, we observe that Wife has failed to specify for this Court where she preserved her argument relating to the integration clause in the BUSA sales agreement. **See** Pa.R.A.P. 2117(c)(4) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify[ . . . s]uch pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on appeal."); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **Cook v. Cook**, 186 A.3d 1015, 1024-25 (Pa. Super. 2018) (collecting cases discussing requirement that parties properly preserve challenges to equitable distribution scheme by raising specific exceptions to master's report or issues will be deemed waived); **Morgan v. Morgan**, 117 A.3d 757, 762 (Pa. Super. 2015) (explaining "appellants may

- 22 -

not raise issues for the first time in a Rule 1925(b) statement"). Accordingly, we deem Wife's integration clause argument waived.[17]

In turning to whether the trial court erred in finding BUSA's transfer was a gift, although not decided in the divorce context, we conclude that **Hera**'s explanation and application of *inter vivos*[18] gift law is correct and applicable to this case. **See Hera**, 625 A.2d at 686 ("The prerequisite elements necessary to prove a valid *inter vivos* gift are donative intent and delivery. Initially, the burden is on the alleged donee to prove a gift *inter vivos* by clear, precise[,] and convincing evidence. Once *prima facie* evidence of a gift is

_____

[17] Wife's integration clause argument is further waived due to Wife's failure to meaningfully develop it with citation to applicable authority that is, in some way, connected to the facts of Wife's case. **See** Pa.R.A.P. 2119(a); **see also C.H.L.**, 214 A.3d at 1277-78; **Llaurado**, 223 A.3d at 257-58. Indeed, Wife only advances her nonspecific argument by quoting our Supreme Court, which wrote that, "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all the parties' negotiations, conversations, and agreements made prior to its execution." Wife's Brief, at 14 (quoting **Yocca v. Pittsburgh Steelers Sports, Inc.**, 854 A.2d 425, 492 (Pa. 2004).

[18] **See Appeal of Walsh**, 15 A. 470, 471 (Pa. 1888) ("All gifts are necessarily *inter vivos*, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift *inter vivos* and called *donatio mortis causa*. But by whatever name called the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or [someone] for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift *inter vivos*, revocable only upon the recovery of the donor in gifts *mortis causa*[.]").

established, a presumption of validity arises and the burden shifts to the contestant to rebut this presumption by clear, precise[,] and convincing evidence.") (citations omitted). Indeed, our Supreme Court's decisions confirm these necessary elements for proving the existence of a gift in the divorce context. *See Ashley v. Ashley*, 393 A.2d 637, 639 (Pa. 1978) ("To establish a valid *inter vivos* gift, it is essential that the two elements of a gift be shown. These elements are (1) an intention to make an immediate gift, and (2) such actual or constructive delivery to the donee as will divest the donor of dominion and control of the subject matter of the gift. Donative intent is the intention to make an 'immediate gift.'" (citations and quotation marks omitted); *see also Wagner v. Wagner*, 353 A.2d 819, 822-23 (Pa. 1976) (identifying same elements and defining delivery as "relinquishment by the donor of dominion and control of the subject matter of the gift. The clearest form of a delivery of a gift of corporate shares is registration of the shares in the name of the donee on the stock ledger of the company coupled with physical delivery to the donee of stock certificates in the name of the donee representing the shares so registered. But less formal modes of delivery have also been held to be sufficient.") (citations omitted).

After our review, we discern no error of law or abuse of discretion by the trial court. *See Carney*, 167 A.3d at 131. We conclude that the record evidence was sufficient to establish both elements that are necessary to prove the gift of BUSA to Husband—by clear, precise, and convincing evidence— including Husband's credited testimony regarding the donative intent of the

- 24 -

Lius and the documentary evidence of their delivery of BUSA to Husband for $1.00. *See id.*; *see also Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003) (Superior Court does not disturb credibility determinations of trial court that are supported by record). Contrary to Wife's claims, there is no requirement that the evidence of a gift come from a particular source, such as the testimony of the Lius; Husband's testimony regarding the intent of the Lius and the circumstances of the BUSA transfer, when combined with the favorable terms to Husband as evidenced in the sales agreement, were sufficient to establish the necessary elements to prove the existence of a gift. *See In re Estate of Chiara*, 359 A.2d 756, 759 (Pa. 1976) (testimony of donee alone sufficient to establish donor's donative intent); *see also Gongaware's Estate*, 109 A. 276, 277 (Pa. 1920) ("The weight of evidence required, however, necessarily varies with the particular circumstances, and it is not to be lost sight of that it would have been most natural for a [donor] to make gifts to [individuals] living with and working for him in such a close family relation as it is admitted existed in the present instance; and that possibly the only ones who would know and almost certainly those who would best know whether or not such gifts had been made, are the same persons.").[19] Further, considering BUSA's value at the time of the transfer

_____

[19] *Cf. Balfour v. Seitz*, 140 A.2d 441, 443 n. 4 (Pa. 1958) ("if the claimant is a close relative[. . .] less evidence to prove the gift is required than to prove a gift to a stranger"). Here, Husband worked and lived with the Lius for years prior to their transfer of BUSA to him.

was greater than one dollar,[20] the portion of BUSA valued above one dollar and delivered to Husband is *prima facie* evidence of donative intent. **See Parkhurst Estate**, 167 A.2d 476, 479 (Pa. 1961) (donor's "acts of jointly registering the shares of the corporation and thus denying to himself a significant part of the control and dominion over the stock are evidence of delivery as well as a manifestation of donative intent"). Therefore, we conclude that the trial court properly excluded the gift value of BUSA from the equitable distribution of marital property. **See** 23 Pa.C.S. § 3501(a)(3). Accordingly, Wife is not entitled to relief on her second issue.

In her third issue on appeal, Wife challenges the trial court's valuation of BUSA at the time it was transferred.[21] Specifically, Wife argues that the valuation of BUSA by Husband's expert, Joseph Egler, was formulated by improperly relying upon an asset-based approach where Egler allegedly had no idea of any of BUSA's assets and debts. **See** Wife's Brief, at 15-16. Wife argues that the value of the gifted portion of BUSA should be conclusively $1.00, as reflected in the sales agreement. **See id.** at 15. Further, Wife

---

[20] **See** N.T. Master's Hearing, 4/29/22, at 66-67 (expert testimony of Joseph Egler, valuing BUSA, based on asset approach, at approximately $304,000.00 on date of transfer to Husband). To the extent Wife challenges Egler's expert testimony, we address her credibility concerns within this decision and find that issue meritless.

[21] In this third issue, Wife challenges the value the trial court assigned to BUSA at the time it was gifted, as distinguished from the valuation assigned to BUSA at the time of the parties' separation, which we address when considering Wife's fourth issue on appeal.

contends that Egler wrongly employed the asset-based approach despite acknowledging that BUSA was losing money at that time. *See id.* at 16. No relief is due.

The trial court explained the basis for its conclusion that BUSA's gift value was approximately $304,300.00 at the time of the transfer as follows:

> Here, the master acted within her discretion by averaging the experts' valuations of [BUSA]. Both experts testified extensively regarding their methodology and conclusions regarding the valuation of [BUSA]. Moreover, both experts prepared extensive reports regarding the value of [BUSA]. The master assigned equal weight to Husband's and Wife's experts. By doing so, the master averaged Husband's expert's appraisal value of $675,000.00 and Wife's expert's appraisal value of $1,722,000.00 and determined the value of [BUSA] to be $1,198,500.00. The master found that Wife was entitled to one-half of the value of [BUSA] in the amount of $599,250.00. However, we find that the master erred in utilizing Wife's expert's valuation of [BUSA] at the time of the hearing before the master. Rather, we find that because [BUSA] is largely under the control and influence of Husband, [it] should be valued closest to the time of separation. At the time of separation, Husband's expert valued [BUSA] at $770,000.00. At the time of separation, [Egler] valued [BUSA] at $1,789,000.00. Thus, we find that by averaging Husband's and Wife's expert valuations closest to the date of separation, the value of [BUSA] is $1,279,550.00.
>
> Next, we find that the master failed to deduct the non-marital portion of [BUSA]. The gift value of [BUSA], $304,300.00, should be deducted from the business's marital value of $1,279,550.00. Therefore, the marital portion of [BUSA] is $975,250.00.

Trial Court Opinion, 10/23/24, at 30-31 (citations and unnecessary capitalization omitted).

After our review, we conclude that Wife mischaracterizes Egler's expert testimony and is not entitled to relief on this issue. Specifically, Egler testified

that Husband acquired BUSA on July 18, 2008, yet Egler noted that the only documentary evidence related to BUSA's value in existence for that time were end-of-year balance sheets for both 2007 and 2008. **See** N.T. Master's Hearing, 4/29/22, at 68. Accordingly, Egler explained that no other approach for valuing BUSA, aside from the asset-based approach, could be applied under the circumstances. **See id.** Egler, relying on the asset-based approach in reviewing BUSA's end-of-year balance sheets, determined BUSA's end-of-year value in 2007 and 2008 to be $350,000.00 and $304,000.00, respectively. **See id.** at 72. Moreover, although Egler observed that BUSA's 2007 and 2008 end-of-year balance sheets reflected operating losses of $425,000.00 and $45,000.00, respectively, those same documents also reflected overall value in BUSA, based on the sale of a warehouse for $889,000.00, which amounted to a "huge profit" in 2007, and an available inventory worth $388,000.00 and receivables of $300,000.00 in 2008, thereby offsetting all of the reported losses and liabilities in that year. **See id.** at 67. Considering the documentary basis for Egler's conclusions, we discern no abuse of discretion or error of law in crediting Egler's supported expert testimony in this regard. **See Carney**, 167 A.3d at 131. Thus, no relief is due on Wife's third issue.

In her fourth issue, Wife claims that the court wrongfully accepted the master's conclusion that the experts' valuations of BUSA at the point in time of the parties' separation could be averaged. **See** Wife's Brief, at 16-20. Wife essentially challenges the weight to be afforded the evidence and claims that

her expert, Andrew Kelly, provided the correct valuation, and thus, Kelly's opinion should have been weighed more heavily than Egler's opinion. *See id.* at 17. Wife points to several perceived problems in Egler's testimony, including that he "admitted that his opinion of value was ultimately less than the liquidation value of the business, an absurd result for any valuation of a business as a going concern." *Id.* Wife further alleges error insofar as Husband was paid approximately $351,020.00 in 2020; however, Egler calculated Husband's wages to be $114,750.00, based on his W-2 documentation, and Egler further conceded that his valuation opinion would have been affected by that change. *See id.* at 17-18. Also, Wife complains that Egler's valuation was based on BUSA's tax returns, but he did not consider the QuickBooks data for the business. *See id.* at 18. Moreover, Wife argues that Egler's valuation was wrongly based on the sporting goods industry as a whole rather than on the bicycle industry, and, further, that the valuation wrongly analyzed BUSA "from a comparable transaction approach [but] utilized a single transaction of a specialized bicycle sales company[ and] did not research the company utilized in his comparable sales approach to any significant degree." *Id.* Moreover, Wife raises the issue that the value assigned to BUSA by Egler is less than half of the value assigned by Wife's expert and that the difference between the valuations alone represented 30 percent of the value of the entire marital estate. *See id.* at 19. Wife maintains that Kelly avoided all of these perceived errors that were made by Egler in forming his opinion of BUSA's value. *See id.* Accordingly, Wife concludes

that the trial court erred insofar as Kelly's and Egler's valuations are widely divergent, yet the court merely averaged them without in-depth analysis or review. *See id.* at 20. No relief is due.

After our review, initially, we conclude that Wife has waived her specific arguments regarding her perceived deficiencies in Egler's methodology due to her failure to properly raise those arguments via her exceptions filed in the trial court. *See Cook*, 186 A.3d at 1024-25. Moreover, these arguments are additionally waived because she did not include those points in her Rule 1925(b) statement, and they are not fairly suggested thereby. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also* Pa.R.A.P. 302(a); *Schultz v. Schultz*, 184 A.3d 168, 177 (Pa. Super. 2018) (declining to reach merits of specific claims not raised in Rule 1925(b) statement). In any event, we discern no abuse of discretion or error of law insofar as we agree with the trial court that both Kelly and Egler testified extensively regarding their methodologies and conclusions, both were substantially cross-examined on the issues, and each prepared extensive reports. Under the circumstances of this case, we discern no error or abuse in assigning equal weight to Husband's and Wife's experts on the issue of BUSA's value. *See Aletto v. Aletto*, 537 A.2d 1383, 1389 (Pa. Super. 1988) ("The Divorce Code does not include a specific method of valuing assets. We have previously held that the court must exercise its discretion, relying upon the estimates and inventories submitted by both parties, the records of purchase prices, and appraisals. In determining the value of marital property, the court is free to accept all of the testimony,

portions of the testimony, or none of the testimony regarding the true and correct value of the property. Here, the trial court acted within its discretion in assigning equal weights to the testimony of the two experts, and averaging the two figures to arrive at an estimated fair market value of the marital home.") (citations omitted). Accordingly, no relief is due, and we proceed to Wife's next issue.

In her fifth issue, Wife argues that the court wrongfully distributed the cryptocurrency in-kind to the parties. In the lone paragraph dedicated to this issue in her brief, Wife claims that:

> Husband testified that he managed all the investments during the marriage and was the one who purchased the cryptocurrency. The divorce master's report indicates that "it is clear from the testimony from both Husband and Wife that Husband was responsible for the parties' finances as well as managing the investment portfolio." Wife testified that she did not have the knowledge to invest in cryptocurrency. Under the circumstances, it was an abuse of discretion to divide this asset in kind thereby requiring Wife to obtain skill and knowledge in order to do so.

Wife's Brief, at 21 (citations and unnecessary capitalization omitted).

We find this issue is waived for failure to develop it with citations to case law or other authority. *See* Pa.R.A.P. 2119(a) ("The argument **shall** be divided into as many parts as there are questions to be argued [. . .] followed by such discussion **and citation of authorities** as are deemed pertinent."); *see also* Pa.R.A.P. 2119(b). It is not this court's responsibility to develop arguments on behalf of the parties, and we may find waiver absent proper

argument development.[22]  ***See C.H.L.***, 214 A.3d at 1277-78; ***see also***

***Llaurado***, 223 A.3d at 257-58.  Thus, we turn to Wife's next issue.

In her sixth issue, Wife alleges the trial court committed an error of law

and an abuse of discretion.  ***See*** Wife's Brief, at 22.  In her error of law claim,

Wife states that, in making its ruling, the trial court erred in failing to consider

appropriate factors, especially Wife's needs under Section 3701 of the Divorce

Code.  ***See id.*** (citing 23 Pa.C.S. § 3701(a)(13)).  Wife relies on her trial

testimony and documentation submitted to the court, where she alleges that

she established her financial needs and living expenses.  ***See id.***  In her abuse

_____

[22] Even if not waived, we would deem this argument meritless as in-kind distributions are appropriate under the Divorce Code, and we would conclude the court did not abuse its discretion or err where it found it was preferable to distribute the cryptocurrency in kind, as that asset was difficult to value.  ***See*** 23 Pa.C.S. § 3502(a) ("Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, **in kind or otherwise**, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors.") (emphasis added); ***see also*** Trial Court Opinion, 10/23/24, at 38-39 ("Regarding sale of the cryptocurrency, Husband stated, "That would force a sale []of an asset in a market that's not necessarily [] advantageous[ly] time[d].  Right now[,] we're in the middle of what they're calling a cryptocurrency winter, which is a downturn in the cryptocurrency market.  It lasts six months, typically."  We find Husband's argument to be persuasive and credit Husband's testimony that cryptocurrency is difficult to value and fluctuates based upon economic conditions.  By splitting the parties' cryptocurrency equally between [them], regardless of the value of the parties' marital portions, [the parties] will share in the value equally at the time of distribution.  As such, we find that it is equitable to distribute to [the parties] their respective marital portions of the cryptocurrency rather than order sale of the asset.") (citations, brackets, and ellipses omitted).  We discern no error of law or abuse of discretion in the trial court's analysis.

of discretion argument, Wife challenges the trial court's adoption of the master's determination that Wife was entitled only to seven years and three months of alimony—and not indefinite alimony—as there was no justification, in Wife's view, for the cessation of alimony after that certain point, aside from the duration of the award of alimony being one third of the length of the parties' marriage. *See id.* at 23. We find no relief is due.

The standard of review for challenges to the trial court's award of alimony is for an abuse of discretion, as we have previously explained:

> Following divorce, alimony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution. An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met.
>
> Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award.

*Kent v. Kent*, 16 A.3d 1158, 1161 (Pa. Super. 2011) (citations and quotation marks omitted).

The trial court set forth its reasoning in awarding alimony to Wife as follows:

> The parties were married for approximately twenty-two years. Therefore, the Master recommended that Wife receive $3,000.00 per month alimony for seven years and three months. Considering the factors in 23 Pa.C.S.[] § 3701(a), we find that

- 33 -

awarding Wife alimony is appropriate for numerous reasons. First, the record establishes Wife's financial need for alimony. Wife has only worked one job outside of the home. Wife earns approximately $15.00 per hour and at the time of the hearing before the Master, Wife's monthly net income was $1,724.00. Husband's monthly net income fluctuates greatly but is significantly greater than Wife's income. Second, during the marriage, Wife was the primary homemaker and caretaker for the parties' children. Third, Wife was a high school graduate in Taiwan while Husband received a college education for six years. Wife's only career outside the home is her current employment as a cashier[,] which she started [] in April of 2018. By contrast, Husband has extensive work experience through [BUSA] and [SRI] and meaningful opportunities to gain employment. Finally, we consider the length of the marriage. The parties were married for nearly twenty-two years. Considering the factors outlined in 23 Pa.C.S. § 3701(a), we agree with the Master that Wife shall receive alimony for a term of seven years and three months. [. . .] In 2020, [SRI's] net profit was $97,333.00. Based upon the factors outlined in 23 Pa.C.S. § 3701(a), we find it appropriate for Husband to pay wife $ 2,500.00 per month in alimony. Alimony shall be modifiable based on Husband's net income and ability to pay and alimony shall terminate upon Wife's remarriage or cohabitation[.]

Trial Court Opinion, 10/23/24, at 58-59 (citations omitted).

After our review, we conclude that the issue is waived because Wife cites no relevant legal authority beyond the standard of review.[23] ***See Kent***, 16 A.3d at 1164 ("Since Wife has provided no citation to legal authority with

---

[23] We would additionally find Wife's argument regarding the trial court's alleged failure to consider her needs waived due to her failure to include that challenge in her Rule 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); ***see also*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

respect to her assertion, the issue is waived."); **see also Llaurado**, 223 A.3d at 257-58. Accordingly, we proceed to Wife's next issue.[24]

In Wife's seventh issue on appeal, she claims that the court's equal division of assets ignored the relevant statutory factors set forth in Section 3502 of the Divorce Code where the trial court allegedly failed to discuss those factors in fashioning that equitable distribution scheme between the parties. **See** Wife's Brief, at 23-26. Specifically, Wife claims that the court failed to consider the third, fifth, and sixth factors set forth in Subsection 3502(a). **See** 23 Pa.C.S. § 3502(a)(3) ("The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties."); **id.** at (a)(5) ("The opportunity of each party for future acquisitions of capital assets and income."); **id.** at (a)(6) ("The sources of

_____

[24] Even if not waived, the trial court's reasoning on the issue belies Wife's assertion that the court did not consider her needs under Section 3701(a) of the Divorce Code. **See** Trial Court Opinion, 10/23/24, at 58 ("Considering the factors in [Section] 3701(a), we find that awarding Wife alimony is appropriate for numerous reasons. [*Inter alia*], the record establishes Wife's financial need for alimony."). Further, the trial court was required to consider all of the Section 3701 factors, including the length of the marriage, in determining the appropriate award of alimony, and we discern no abuse of discretion under the circumstances where the court appropriately considered the required factors in addition to the length of the marriage. **See** 23 Pa.C.S. § 3701(b)(5); **see also Llaurado**, 223 A.3d at 259 (concluding that trial court did not abuse its discretion in fashioning alimony award where it adequately addressed Section 3701(b) factors); **Anderson v. Anderson**, 822 A.2d 824, 830-31 (Pa. Super. 2003) (no abuse of discretion where court considered facts of case and awarded alimony for five years, to be paid by husband to wife, and record revealed "husband's earning capacity is far superior to wife's, in addition to the fact that husband stands to inherit a vacation home from his parents").

income of both parties, including, but not limited to, medical, retirement, insurance or other benefits."). Wife concludes that Husband is positioned to prosper independent of the distribution of marital assets whereas Wife's position is dependent upon her financial award in the equitable distribution. *See* Wife's Brief, at 26. Wife, therefore, asserts that the trial court should have awarded a disparate portion of the marital property in the equitable distribution to her—rather than ordering an equal division of assets between the parties—and cites to our decision in *Fratangelo v. Fratangelo*, 520 A.2d 1195 (Pa. Super. 1987), for the proposition that there is no presumption favoring an even split of marital assets between the parties. We find no relief is due.

After our review, initially, we observe that Wife has failed to identify where in the record she preserved her claim that the Court wrongly applied a presumption in contravention of the rule set forth in *Fratangelo*, and therefore, that portion of her argument is waived.[25] *See* Pa.R.A.P. 2117(c)(4); *see also* Pa.R.A.P. 302(a); *Morgan*, 117 A.3d at 762. Further, we observe that Wife's claim, as presented in her Rule 1925(b) statement, merely states the issue for appeal as "7. The [t]rial [c]ourt committed an error of law or an abuse of discretion by awarding an equal division of [m]arital [a]ssets." Wife's Pa.R.A.P. 1925(b) Statement, 12/20/24, at 2. Accordingly,

---

[25] In any event, even if not waived, we would find this claim has no merit as we have not located where in the record the trial court discusses, suggests, or implies that it applied such a presumption in this case.

we find that Wife failed to preserve her arguments relating to the court's failure to consider the factors set forth in Section 3502(a), as that claim is not specified or fairly suggested by the issue as raised in Wife's Rule 1925(b) statement.[26]   *See* Pa.R.A.P. 1925(b)(4)(vii); *see also* Pa.R.A.P. 302(a); ***Schultz***, 184 A.3d at 177.  Accordingly, we proceed to Wife's next issue.

In her eighth issue of the appeal, Wife argues that the trial court erred in failing to award her counsel fees and costs in connection with this litigation. ***See*** Wife's Brief, at 27-29.  Specifically, Wife asserts that the failure to make this award in her favor does not effectuate economic justice, in contravention of Section 3102 of the Divorce Code.  ***See id.*** at 29 (citing 23 Pa.C.S. §

---

[26] Even if not waived, we would find no relief is due on her claim that the court failed to consider the factors set forth in Section 3502(a).  We note that, although not wholly discussed in one dedicated location or section within the trial court's Rule 1925(b) opinion, contrary to Wife's claims, the trial court clearly considered each of the complained-of allegedly missing factors in fashioning its ruling and our review reveals that the court comprehensively considered the relevant facts and factors appropriately.  ***See*** Trial Court Opinion, 10/23/24, at 58 (addressing facts relevant to Section 3502(a)(3), (5), and (6) analyses, and stating, "Wife has only worked one job outside of the home.  Wife earns approximately $15.00 per hour and at the time of the hearing before the [m]aster, Wife's monthly net income was $1,724.00.  [. . .]  Second, during the marriage, Wife was the primary homemaker and caretaker for the parties' children.  Third, Wife was a high school graduate in Taiwan while Husband received a college education for six years.  Wife's only career outside the home is her current employment as a cashier[,] which she started [] in April of 2018.  [. . .]"); *see id.* at 39, 44-46, 51-53 (same, including trial court's consideration of facts relating to parties' checking accounts, life insurance policies, retirement and investment accounts, and medical insurance).  As the record shows that the trial court was aware of and weighed the facts and factors that Wife wrongly maintains it ignored, if not waived, we would conclude this issue has no merit.

3102(a)(6)). Wife relies on the findings of the master that Husband was non-compliant with discovery requests and failed to speak with Wife's expert, and she further points to the master's recommendation to grant Wife's counsel fees due to Husband's unnecessary delay in producing documents. *See id.* Wife further maintains that the awarded alimony will not cover her attorney's fees, expert fees, and costs of this litigation, including those associated with the exceptions and the appeals. *See id.* No relief is due.

We have explained that we review challenges to the trial court's grant or denial of attorney's fees for an abuse of discretion. *See Benson v. Benson*, 515 A.2d 917, 920 (Pa. Super. 1986); *see also* 23 Pa.C.S. 3702(a) ("Reasonable counsel fees and expenses may be allowed pendente lite."). In reviewing for such an abuse of discretion, we consider the following:

> The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Gates v. Gates*, 933 A.2d 102, 109 (Pa. Super. 2007) (citations omitted); *see also Llaurado*, 223 A.3d at 259 ("Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also[, . . .] we do not usurp the court's duty as fact finder."). "A determination to deny

or award counsel fees is to be made on a case[-]by[-]case basis after analyzing all relevant factors including the party's ability to pay, the separate financial situation of the opposing party, and the character, situation[,] and surroundings of both parties." **Benson**, 515 A.2d at 920.

Our Supreme Court explained that the "American Rule" is applicable in the divorce context as follows:

> The general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct. This so-called American Rule holds true unless there is express statutory authorization, a clear agreement of the parties or some other established exception.

**McMullen v. Kutz**, 985 A.2d 769, 775 (Pa. 2009) (citations and quotation marks omitted).

The trial court explained its decision to deny Wife's request for attorney's fees and costs as follows:

> Here, the master extended Wife's alimony payments in lieu of awarding counsel fees. **See** Master's Report. We find that Wife is not entitled to counsel fees, expert fees, or costs. Wife argues that Husband delayed litigation by failing to produce documents, but we credit Husband's argument that he "did not intentionally delay, rather, he had difficulty responding to the detailed discovery request because it came when his business was working through COVID[-19] and his bookkeeper was unable to help accumulate the documents requested because she was ill, then died from cancer. Although there is a disparity between the parties' incomes, we find that by distributing the parties' assets in kind, once all assets are distributed, Wife will be "on a par" with Husband.

Trial Court Opinion, 10/23/24, at 60-61 (citations and unnecessary capitalization omitted).

After our review, we discern no abuse of discretion in the determination of the trial court to decline to award Wife costs and fees. ***See Benson***, 515 A.2d at 920. Based on the equitable distribution scheme ordered in this case, including the APL that we discuss later within the body of this decision, the parties are on a par with each other, and Wife has failed to establish her need for costs and attorney's fees. ***See Llaurado***, 223 A.3d at 259; ***see also Dech v. Dech***, 492 A.2d 41, 44 (Pa. Super. 1985) (finding no abuse of discretion in trial court determination that wife was not entitled to counsel fees because she had similar economic resources to husband). Further, we are bound by the court's credibility finding that concluded Husband was credible as to the wrongful delay alleged by Wife. ***See Carney***, 167 A.3d at 131; ***Anzalone***, 835 A.2d at 780. Accordingly, no relief is due on this issue or any issue in Wife's appeal at 3227 EDA 2024.

Next, we proceed to review the merits of Husband's lone claim on appeal presented in his appeal at 3112 EDA 2024. ***See supra*** at fn. 1. In that appeal, Husband argues that the court double-counted certain income in determining his income for APL purposes. Specifically, Husband asserts that:

> In 2018[, BUSA] paid Husband compensation of one hundred and nine thousand nine hundred and eighty-one ($109,981[.00]) dollars. Consistent with his prior practice[, Husband] reinvested profit of one hundred seventeen thousand seven hundred and fifteen ($117,715[.00]) dollars. A July 8, 2019 APL order included this reinvested profit in its calculation of 2018 disposable income.
>
> Husband paid this order in 2019 and 2020. BUSA lost money in 2019, but in 2020[,] during the pandemic[,] it had an extraordinary year. [Husband] paid himself the profit he never took in 2018 and 2019. In 2020[,] he bonused himself twice the

- 40 -

amount of the 2018 reinvested profit for each of the years. The trial court included this undistributed profit again in the calculation of Husband's disposable income in the November 16, 2022 order even though the income had been included in the prior order and Husband paid APL based upon its inclusion.

Husband's Brief, at 2 (unnecessary capitalization omitted).

Further, Husband relies on our Supreme Court's decision in *Labar v. Labar*, 731 A.2d 1252 (Pa. 1999), for the proposition that reinvesting profit in a business is appropriate if it is a business necessity and not done to avoid a support obligation. *See id.* at 4. Husband concludes that the trial court's reliance upon "the 2020 reimbursement for income never received by Husband but used to calculate APL is a 'double dip'[. . . .] The two-year profit reimbursement should not be included in Husband's 2020 disposable income." *Id.* at 5. Restated, Husband argues that the profit to BUSA in 2018 was calculated as income to him in that year despite the fact that he reinvested it in BUSA. Husband concludes that when he finally received that profit in 2020, that income had already been counted in 2018 and thus should not have counted in 2020. *See id.* at 5. We find no relief is due.

We review an order requiring a party to pay APL under an abuse of discretion standard. *See Dalessio v. Dalessio*, 805 A.2d 1250, 1252 (Pa. Super. 2002) ("If an order of APL is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court."). "In determining whether the trial court's decision constitutes an abuse of discretion, we generally evaluate its reasonableness in light of the record and its relation to the purposes of the Divorce Code[.]" *Wayda v. Wayda*, 576

- 41 -

A.2d 1060, 1068 (Pa. Super. 1990); *see also Flory v. Flory*, 527 A.2d 155, 156 (Pa. Super. 1987) ("Abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable as shown by the evidence of the record.") (citation and quotation marks omitted). Also, "[t]he fact-finder is in the best position to assess credibility of witnesses and we do not disturb credibility determinations on appeal." *Busse v. Busse*, 921 A.2d 1248, 1255 (Pa. Super. 2007).

This Court has explained the purposes underlying a trial court's order of APL:

> APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare.

*Id.* at 1254; *see also Remick v. Remick*, 456 A.2d 163, 169 (Pa. Super. 1983) (*en banc*) ("[T]he purpose of [APL] is to enable the dependent spouse to maintain or defend the principal action in divorce."). "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse." *Childress v. Bogosian*, 12 A.3d 448, 463 (Pa. Super. 2011) (citations and quotation marks omitted). Further, "[i]n ruling on a claim for [APL], the court should consider the following factors: the ability of the other

party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." ***Id.*** (citations omitted).

We have relied on the definition of income set forth in Section 4302 in reviewing parties' APL obligations. ***See Bielak v. Bielak***, 210 A.3d 1117, 1119 (Pa. Super. 2019) (citing 23 Pa.C.S. § 4302); ***see also Hall v. Bartron***, 321 A.3d 1047, 1054 (Pa. Super. 2024) ("Relevant here, the statutory definition of "income" includes "income derived from business;" "gains derived from dealings in property;" "rents;" "dividends;" and "distributive share of partnership gross income").

"[A]ll benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation." ***Fennell v. Fennell***, 753 A.2d 866, 868 (Pa. Super. 2000); ***see also Labar***, 731 A.2d at 1255 ("'Cash flow' ought to be considered and not federally taxed income.") (citation omitted); ***id.*** at 1257 ("In cases where cash flows which could have been disbursed to shareholders have instead been disbursed for business expenses, the corporation must show that the expenditures were necessary for the continued operation and smooth running of the business in order to refute an allegation that the corporation has sheltered cash flows."). In cases where a payor owns a business, that payor's income is calculated to "reflect the actual available financial resources of the payor spouse." ***Fitzgerald v. Kempf***, 805 A.2d 529, 532 (Pa. Super. 2002). Indeed, an "owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate

expenditures, and/or corporate distribution amounts. By the same token, however, we cannot attribute as income funds not actually available to or received by the party." *Fennell*, 753 A.2d at 868; *see also Hall*, 321 A.3d at 1054 ("It is possible that a person could use a corporation to shelter income from the support obligation calculation by improperly retaining cash flows within the corporation rather than disbursing them to the shareholders.") (citation omitted). "[I]n situations where the individual with the support obligation is able to control the retention or disbursement of funds by the corporation, he or she still will bear the burden of proving that such actions were 'necessary to maintain or preserve' the business." *Fennell*, 753 A.2d at 869 (citing *McAuliffe v. McAuliffe*, 613 A.2d 20, 23 (Pa. Super. 1992)).

Instantly, the trial court explained its calculations of Husband's assets for APL purposes as follows:

> On May 11, 2023, counsel for the parties took the deposition of John V. Filipos, CPA, MST. [] Filipos testified that he was the accountant for [Husband]'s corporation, [BUSA], and had been since 2008. [] Filipos identified and discussed [BUSA]'s federal tax returns for the years 2018 through 2022. [] Filipos noted that [BUSA] is not a cash business and does not receive most its receipts by cash. [] Filipos noted that the "taxable income" after expenses was not paid out to [Husband] in 2018 but was reinvested into the company as he had done in the past.
>
> The same circumstances were reflected on the 2020 income tax return. [] Filipos testified that [Husband] took a salary of approximately $114,000.00 in 2020 along with a bonus of $236,502[.]00. On cross examination, [] Filipos indicated that he had never audited the expenses of [BUSA] and was not aware of anyone auditing its expenses. [] Filipos testified that [Husband] was the 100% owner of all shares of the business and could fully control the profits of the company, within the bounds of

permissible corporate actions. [] Filipos acknowledged that [Husband] could issue the profits as dividends, put them in a bonus, and was not required to leave the profits in the business.

On May 11, 2023, counsel took [Husband]'s deposition[. Husband] confirmed that he did not take the profit out of [BUSA] in 2018. [BUSA] did not generate a profit in 2019, but [Husband] had an officer compensation of $110,500.00. In 2020, [Husband] received compensation of $114,500.00 plus the bonus discussed above of approximately $236,000.00. [Husband] indicated that he took the bonus, essentially because of his interpretation of the Domestic Relations Sections' calculations of his income from 2018 and 2019 in prior APL orders and the bonus was his attempt to essentially offset [prior calculations of] his income.

In 2021, [Husband] received $97,788.00 in compensation while the company took a loss. [Husband] testified that in 2022, he only received $13,154.00 in compensation despite [BUSA] having a similar loss to years past. [Husband's] personal income tax returns for the years 2018 through 2022 were also admitted during his deposition. [Husband] testified that he had sole control over the profit and gross revenues of [BUSA] and that he chose to reduce his salary in 2022 due to a sales decline. [Husband] indicated that he fully expected the business to recover. [Husband] also acknowledged increased payments to several employees during 2022, professional fees paid to an expert in the parties'[] divorce being deducted as expenses for [BUSA], and that he continued to pay significant amounts for the parties' adult daughter including housing, interest on school loans, and college tuition. Taking into account the evidence submitted in the course of the depositions, the briefs submitted by counsel, oral argument of the parties/their counsel, and a full review of the [domestic relations case] file, [the trial court] determined that utilizing [Husband]'s personal income tax returns, along with the corporate tax returns for [BUSA] allowed th[e] court to determine [Husband]'s actual available financial resources. [The court was] also able to utilize those returns to consider all benefits flowing from corporate ownership to [Husband] to determine [his] actual income available to calculate his APL obligation. Contrary to [Husband]'s argument, utilizing the bonus payment as income for APL calculations, which was reflected on [Husband]'s individual and [BUSA]'s corporate tax returns, while also relying on [Husband]'s personal and [BUSA]'s corporate tax returns in prior and subsequent years, is not "double-dipping," but is in fact consistent with the record and prior decisions in this matter.

Trial Court Opinion, 1/22/25, at 7-10 (citations, quotations marks, and unnecessary capitalization omitted).

After our review, contrary to Husband's claims, the court did not count the same income twice. Instead, the court's assessment of Husband's income occurred sequentially in different years. More specifically, Husband—as the sole owner of BUSA—has the ability to control whether business profits are retained in BUSA or distributed, and he failed to carry his burden to demonstrate that the reinvested $117,715.00 was necessary for maintaining BUSA in 2018. *See Fennell*, 753 A.2d at 869; *see also Labar*, 731 A.2d at 1258-59 ("If the source of the funds used [in the business] is identified as cash flows which could have instead been distributed to the shareholders, then and only then does the question arise whether the expenditures were unnecessary and therefore properly included in the calculation of the [obligor's] disposable income."). On this record, Husband's decision in 2018 to reinvest his profits in the business is just that, a business decision, rather than a business necessity, as evidenced by Filipos's deposition testimony and the court's credibility determination on that point, the latter of which we may not reweigh as it is supported in the record. *See* N.T. Deposition of John V. Filipos, CPA, 12/13/19, at 66, 68, 77-78, 84; *see also Fitzgerald*, 805 A.2d at 532; *Busse*, 921 A.2d at 1255. Further, Husband's later decision in 2020 to pay himself the business profits is similarly a business decision, and that sum amounts to income to Husband in 2020, separate and apart from the income he reinvested in 2018. *See Hall*, 321 A.3d at 1054 (defining "income"

to include business dividends); *see also* 23 Pa.C.S. § 4302. We discern no abuse of discretion or error of law. Accordingly, Husband is not entitled to relief in his appeal at 3112 EDA 2024.

Last, we turn to Wife's appeal at 3239 EDA 2024. In that appeal, Wife raises the following issue for our consideration: "Did the trial court commit an error of law or an abuse of discretion by assessing [Husband] with income which is lower than [his] actual income and lower than [his] earning capacity?" Wife's Brief, at 2 (unnecessary capitalization omitted).

Specifically, Wife asserts that the trial court erred when it calculated Husband's income in 2022 to be $73,073.64 for APL purposes, which the court determined based on Husband's 2022 personal and corporate tax returns. *See id.* at 13. Wife claims that Husband wrongly manipulated his apparent income in 2022 by maintaining a stock of inventory in BUSA rather than paying himself where he had such flexibility and control as BUSA's owner. *See id.* at 11. Wife argues that the record demonstrates that Husband historically paid himself a salary of $100,000.00, but his wages were only $13,154.00 in 2022. *See id.* at 10-11. Wife also relies on Husband's testimony regarding his spending and cash flow for that year and argues that because he paid for their adult child's college education and housing, which payments exceeded $36,300.00 in 2022, the 2022 tax return does not reflect his resources and income. *See id.* at 12. Wife further relies on Husband's personal 2022 bank account statements, which showed deposits of almost $200,000.00 in that year. *See id.* Wife complains that over $93,000.00 is unaccounted for in the

trial court's determination of Husband's income in that year. *See id.* at 13. Wife concludes that Husband failed to meet his burden that maintaining a stock of inventory in BUSA in that year was necessary to maintaining BUSA's business operations. *See id.* No relief is due.

After our review, we find no abuse of discretion or error of law. *See Dalessio*, 805 A.2d at 1252; *see also Wayda*, 576 A.2d at 1068. As noted in our review of Husband's appeal in 3112 EDA 2024, above, the trial court's assessment of Husband's income for APL purposes occurred sequentially by year and was consistently based on his personal and corporate tax returns, thereby nullifying risks of double counting across years or of Husband hiding assets, as both corporate and personal tax statements were considered. *See* Trial Court Opinion, 1/22/25, at 13 ("The November 13, 2023 order, currently on appeal, clearly reduced [Husband]'s APL obligation from the prior order, as a result of the reduced income set forth in his 2022 personal and corporate tax returns. This continued the practice that had been established throughout this matter, allowing us to accurately account for the disposable income available to [Husband], as an individual and as the sole shareholder of [BUSA]. [. . .] Given that each modified APL order in this matter was based upon the most recent tax returns, there was no double dipping as to the reinvested income.") (quotation marks and unnecessary capitalization omitted); *see id.* at 14 (explaining "the tax returns utilized in calculating [Husband]'s APL obligation gave [the court] the best and most complete understanding of the actual available financial resources and, cash flow available to [Husband].

- 48 -

Those returns also allowed [the court] to consider all of the benefits flowing from corporate ownership in determining [Husband's] income available to calculate his APL obligation[.]") (citation and quotation marks omitted); ***see also Moser v. Renninger***, 116 A.3d 1107, 1115 (Pa. Super. 2015) (finding no abuse of discretion in considering, *inter alia*, tax returns for determining support obligation).

Therefore, neither party is entitled to relief in any of the appeals at 3154 EDA 2024, 3227 EDA 2024, 3112 EDA 2024, or 3239 EDA 2024.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/5/2026